Jimmy Lee SLAVENS, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–76–500.

Court of Criminal Appeals of Oklahoma.

Jan. 31, 1977.

Paul R. Anderson of Thomas, Hert & Anderson, Stillwater, for appellant.

Larry Derryberry, Atty. Gen., Harold T. Garvin, Jr., Asst. Atty. Gen., for appellee.

OPINION

BUSSEY, Judge:

The Appellant, Jimmy Lee Slavens, hereinafter referred to as defendant, was charged, tried and convicted in the District Court, Payne County, Case No. CRF–75–151, for the offense of Burglary in the Second Degree, After Former Conviction of a Felony, in violation of 21 O.S.1971, § 1435. After a bifurcated proceeding before a jury,

the defendant was sentenced to serve a period of ten (10) years' imprisonment, and from said judgment and sentence a timely appeal has been perfected to this Court.

The State's first witness was Mr. Jim Matheson, who testified that he worked for the Traffic Control Department of the City of Stillwater, Oklahoma; that he was so employed on the 19th day of June, 1975 and was working at the intersection of Sixth and Western in that city. He knew the defendant personally and saw the defendant coming from a southerly direction operating a late-model Ford automobile, yellow and black in color. He stated that he also saw two other persons in the automobile with the defendant, one of whom he tentatively identified as Howard Bates.

The next witness, Mr. Lindy Wilson, testified that he lived on lot number ten, in Tan Tara which is about eight miles west of Stillwater; that this property is located in Payne County, Oklahoma. He then described his house and stated that the doors and windows were closed when he departed for work on the 19th day of June, 1975. Mr. Wilson also stated various personal property had been kept in the house which included numerous firearms and pieces of jewelry. He reported that after receiving several phone calls at his residence in which the party placing the calls had hung up upon his answering the telephone, he left for work at approximately 8:30 a. m. He stated that he returned to his home at about 11:00 a. m. on the 19th day of June, 1975, to discover some of his firearms and jewelry were missing and the house was in a general state of disarray.

On cross-examination, the homeowner testified that while both the doors and windows were shut when he left for work that morning, he discovered no sign of forcible entry into his house. On re-direct examination, Mr. Wilson reiterated that he had given no one permission to enter his house or remove any of his personal items.

Rolunda Burnham next testified that she was a neighbor of Mr. Wilson's, and her house was located about 100 yards from the Wilson home. She described the neighborhood and testified that on the 19th day of June, 1975, at approximately 10:15 a. m., she noticed an unusual car in the Wilson driveway. She stated that she knew both Mr. and Mrs. Wilson were at work that day. She then described the automobile as a gold car with a white top and testified that after observing the car in the driveway for about five minutes, she observed three men come out of the Wilson house and hurriedly enter the above described automobile and leave the neighborhood at a speed faster than normal. At one time the defendant was within thirty feet of her window. She then identified the defendant as the operator of the automobile. Immediately after the departure of the defendant, and at the request of one of the occupants of the house, she went to the dwelling and discovered that the door connecting the utility room and the house, was unlocked and open. She then testified that she accompanied a law enforcement officer to a used-car lot and there identified the automobile she had seen at the Wilson's residence by means of its make, color and an unusual dent with a missing piece of chrome on one side of the car. Ms. Burnham then identified State's Exhibits 1 and 2, which were photographs of the above described automobile. On cross-examination, she testified that she had seen one photograph of the defendant, presented to her by law enforcement officers either the day after the incident or two days after the incident. At that time she told the officers that the photograph was indeed the man she had seen driving the automobile.

On cross-examination, the witness testified that she was unable to identify the other two individuals in the car. On further cross-examination, Ms. Burnham pointed out that her in court identification of the defendant had not been influenced by her observation of his photograph which was presented to her by law enforcement officials.

The next witness for the State was Gerl Johnston, who testified that he was an employee of a used car lot in Stillwater, Oklahoma; that on the 19th day of June, 1975,

between 9:00 and 10:00 a. m., the defendant came to him and asked to borrow and test-drive a 1967 Ford, two-door, white over yellow automobile. He identified the defendant as the person who had borrowed this car. Johnston testified that he left for lunch around 11:30 a. m. and at that time the car had not been returned, but upon his returning to work from lunch, at approximately 12:15 p. m., the car had been returned to the lot.

On cross-examination, he testified that he did not know how the car was returned to the lot, or by whom, and that he could not recall the exact time the car was borrowed, but it was some time between 9:00 a. m. and a little after 10:00 a. m. on the 19th of June.

Joe Staley, Deputy Sheriff of Payne County, testified that he obtained a description of the automobile from Ms. Burnham and conducted an investigation in the neighborhood and Stillwater for such an automobile. Later in the day on June 19th, he located an automobile matching the description given to him by Ms. Burnham, at Giant Motors in Stillwater. At that time, Deputy Staley interviewed the last witness, Mr. Johnston, and received information concerning the involvement of the automobile that morning. He testified that Ms. Burnham identified the automobile as the one she had seen at the Wilson residence.

On cross-examination, the defense brought out that three persons had been arrested concerning the instant offense and that one, Mr. Bates, had confessed to participating in the offense. At that time, the defense attorney attempted to elicit testimony from this witness that a deal had been made with the witness Bates that if he confessed and implicated the defendant that no charges would be brought against Bates. The deputy admitted that he had told Bates he would help him if he confessed.

The next witness for the State was Deputy Stokes who testified that he was the jailer on the 20th day of June, 1975, when the defendant, Slavens, was brought to the Payne County Jail. He testified that he

was in charge of the booking procedure on that date and that as a part of the normal booking procedure an inventory was taken of the defendant's personal effects, including the objects in his billfold. The billfold was returned to the defendant who was then placed in a cell. Some forty-five minutes later the jailer returned to defendant's cell, obtained possession of the billfold once again, and this time removed a white slip of paper with a telephone number written thereon. Over the objection of the defendant, the slip of paper was admitted into evidence and testimony was heard which indicated the telephone number was identical to the one located at the Wilson home.

The next witness for the State was Howard Bates, Jr., who stated that he was twenty-nine years old and had finished the ninth grade. He testified that on the morning of June 19, 1975, the defendant picked him up in a white-over-yellow Ford at which time they proceeded to Tan Tara and there burglarized a home, taking some weapons and jewelry. He identified State's Exhibits 1 and 2 as pictures of the automobile in which they were riding. He testified that he did not know what had become of the property taken. On direct examination Bates testified that he had made no "deals" with law enforcement officials concerning his testimony. On cross-examination, the defense brought out that the defendant had stated at a prior hearing that if he gave his testimony the State would try to help him. Bates also testified, on cross-examination, that he had been in jail before for larceny.

At this time the State rested, the defendant's Demurrer was overruled, and the defense rested.

▆ For his first assignment of error the defendant urges that the trial court erred in overruling his Demurrer to the State's evidence; specifically that the State had failed to prove that portion of the Information on file herein that stated that the breaking and entering was accomplished by breaking open the patio door of said building and entering without the consent of said owner. As his authority for this argument, defendant then cites numerous cases

decided by this Court in which the rule of law, which is fundamental to our system, is laid down concerning the burden of the prosecution to prove each and every material element of the crime charged by the evidence beyond a reasonable doubt. With this basic and fundamental rule of law we wholeheartedly agree; however, we think it has no application in this case. It is a well settled rule in Oklahoma, as in many other states, that essential elements of a criminal offense may be proven circumstantially as by any other means. In *Roberts v. State,* Okl.Cr., 479 P.2d 623 (1971), we held:

". . . This Court has consistently held that where there is evidence, although entirely circumstantial, from which the jury may reasonably and logically find the defendant guilty, the weight, credibility and probative effect of such evidence is for the jury, and the Court of Criminal Appeals will not disturb the verdict for insufficiency of the evidence. *Hunter v. State,* Okl.Cr., 478 P.2d 1001."

■ From a careful examination of the evidence, particularly the statement of the homeowner that his doors and windows were closed upon his departure for work that date, coupled with the testimony of the witness Burnham that she had seen the defendant and two others running from inside the Wilson home and that on her inspection of the house she had discovered the utility door open, leads us to the conclusion that there was ample evidence to submit this cause to the jury. In *Williams v. State,* Okl.Cr., 478 P.2d 359 (1970), we stated in the body of the opinion:

". . . Defendant proposes that the weak link in the chain of circumstances is that there was not a witness to place him in the . . . home. While such statement is correct, the other circumstantial evidence weaved a web about him sufficient to convince the jury that the crime was committed by the accused. . . ."

Therefore, we are of the opinion that the court correctly overruled the defendant's Demurrer and that there was more than sufficient evidence in the record to justify submitting the cause to the jury.

For his next assignment of error, the defendant urges:

"The court erred in failing to suppress the in-court identification of the defendant by State's witness Rolunda Burnham for the reason that her in-court identification of defendant was prejudiced by a prior unlawful and prejudicial exhibition of defendant's photograph."

We note that the trial court conducted a lengthy pretrial hearing on the Motion to Suppress and an examination of the hearing held on the 30th day of October, 1975, disclosed the following facts:

Undersheriff Jack Stark and Sheriff Joe Staley testified that the defendant, Slavens, was charged and taken into custody and a polaroid photograph was taken of defendant in the hallway outside the Sheriff's Office. Later that same day, Undersheriff Stark displayed the photograph to Ms. Burnham, who positively identified it. When asked if he had advised the witness that the defendant was a suspect and in custody, Stark stated that he did not remember making such a statement but that it was possible that he had, since the defendant had been arrested and was in custody. Sheriff Staley stated that two other suspects (Johnson and Bates) were later arrested and their photographs were displayed to Ms. Burnham, who was unable to identify them.

Ms. Burnham testified that a photograph of the defendant was brought to her house. She did not recall whether or not the officials advised her that the defendant was a suspect or in custody, since there had been a considerable lapse of time between the time she was shown the photograph and the hearing. She emphatically testified, repeatedly, that her in-court identification of the defendant was based on her observation of him at the scene of the crime when she observed him during daylight hours at a distance of some thirty feet. This witness stated that she was shown photographs of other suspects, but was unable to identify

them since she only had an opportunity to closely observe the driver of the vehicle.

In *Simmons v. United States,* 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968), the Supreme Court, in dealing with pretrial photographic identification, stated:

"Despite the hazards of initial identification by photograph, this procedure has been used widely and effectively in criminal law enforcement, from the standpoint both of apprehending offenders and of sparing innocent suspects the ignominy of arrest by allowing eyewitnesses to exonerate them through scrutiny of photographs. *The danger that use of the technique may result in convictions based on misidentification may be substantially lessened by a course of cross-examination at trial which exposes to the jury the method's potential for error.* We are unwilling to prohibit its employment, either in the exercise of our supervisory power or, still less, as a matter of constitutional requirement. Instead, we hold that each case must be considered on its own facts, and that convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. This standard accords with our resolution of a similar issue in *Stovall v. Denno,* 388 U.S. 293, 301–302, 87 S.Ct. 1967, 1972–1973, 18 L.Ed.2d 1199 and with decisions of other courts on the question of identification by photograph." [Footnote omitted, emphasis added]

During the trial, Ms. Burnham was examined and extensively cross-examined by counsel for defense and she was unwavering in her statement that the in-court identification was based on her observing him at the scene. Here, as in *Gonzales v. State,* Okl.Cr., 480 P.2d 930 (1970), the evidence convinces us that the courtroom identification was made as a result of observation of the defendant at the scene rather than on the basis of a photograph shown to her at a

later date, and that the procedure employed was not so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. We, accordingly, find this assignment of error to be without merit.

Assuming that the courtroom identification had been made in violation of the rule enunciated in *Simmons,* the evidence, independent of such identification, was sufficient to treat the in-court identification as harmless error under *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967) and *Schneble v. Florida,* 405 U.S. 427, 92 S.Ct. 1056, 31 L.Ed.2d 340 (1972).

For his final assignment of error the defendant urges that the trial court erred when it overruled his Motion for New Trial by reason of juror misconduct. Specifically, the defendant objects to the fact that after the jury received the evidence and both sides had rested, that one of the jurors, Mrs. Ackerson, communicated with both the bailiff and the trial court. In support of his argument, defendant cites as his authority 22 O.S.1971, § 857, which read as follows:

"After hearing the charge, the jury may either decide in court, or may retire for deliberation. If they do not agree without retiring, one or more officers must be sworn to keep them together in some private and convenient place, and not to permit any person to speak to or communicate with them, nor do so themselves, unless it be by order of the court, or to ask them whether they have agreed upon a verdict, and to return them into court when they have so agreed, or when ordered by the court."

At the Motion for New Trial, both the bailiff and the juror testified as to communications made between them. The record is not clear, but it appears that prior to the submission of the case, and after its submission, Mrs. Ackerson advised the bailiff, Carol Broemeling, that she was suffering from arthritis and that she did not wish to serve on the jury during the ensuing case after defendant's trial had been concluded. The evidence on the Motion for New Trial by

both of these witnesses further disclosed that the juror made known to the Judge that she had sat on three cases, that her arthritis was bothering her, and she did not wish to serve on any other juries. Although the question was asked several times whether she had discussed any facts relating to the case, both the juror and the bailiff repeatedly stated that the only discussion was concerning the discomfort suffered by the juror and her desires not to serve on any further juries after the completion of the trial.

 Assuming that all conversations between the bailiff, the juror and the Judge occurred subsequent to the time the case was submitted to the jury, it is abundantly clear that these communications in no way related to the guilt or innocence of the accused, nor did they influence her verdict against the defendant, nor did such discomfort impair her ability to serve as a juror. In light of the record before us, it is clear that the error was harmless and that the presumption of prejudice was amply overcome by the testimony of the juror, the bailiff and the statements of the trial court. See, *Wilson v. State,* Okl.Cr., 534 P.2d 1325 (1975).

Having found this assignment of error to be without merit, and in accordance with the authority above set forth, the judgment and sentence appealed from is AFFIRMED.

BRETT, P. J., concurs in results.

BLISS, J., concurs.