Thomas Leroy BELL, Appellant,

v.

The STATE of Oklahoma, Appellee.

Nos. F–79–209, M–79–210.

Court of Criminal Appeals of Oklahoma.

April 1, 1980.

Stanley D. Monroe, Appellate Public Defender, Tulsa County, for appellant.

Jan Eric Cartwright, Atty. Gen., Timothy S. Frets, Asst. Atty. Gen., Jennie L. McLean, Legal Intern, for appellee.

## OPINION

BUSSEY, Judge:

Thomas Leroy Bell, hereinafter referred to as the defendant, was charged in Case Nos. CRF–78–2113 and CRM–78–1147, with the crimes of Possession of Controlled Drug, AFCF, and Unlawful Possession of Controlled Drug, respectively, pursuant to 63 O.S.Supp.1972, § 2–402, in the District Court of Tulsa County. The defendant waived jury trial and was found guilty of both offenses. Punishment was fixed at five (5) years' in the custody of the State Department of Corrections for CRF–78–2113 and one (1) year in the Tulsa County jail for CRM–78–1147.

Because the issues involved in the two cases are identical, both appeals have been consolidated for purposes of this opinion.

On August 16, 1978, at approximately 3:00 p. m., officers of the Tulsa Police De-

partment executed a warrant authorizing the search of an apartment belonging to Connie Sewell. Because there was no one in the apartment when the officers arrived, they entered through an open window and began searching for narcotics. During the course of this search, the officers found hypodermic syringes, needles and a spoon containing a melted substance. While the search was being conducted, the defendant, Ms. Sewell, and one other person entered the residence. As the defendant entered, Officer Wayne Allen identified himself as a police officer and ordered the defendant, at gunpoint, to place his hands on his head. Officer Allen then patted defendant down for weapons and found a pill bottle containing the controlled substances which are the subject of the convictions. At trial the narcotics were admitted into evidence over defendant's timely motion to suppress.

The defendant makes several arguments why the trial court should have suppressed the evidence. However, because this case must be reversed, we will only discuss the defendant's argument that there was no probable cause to conduct a pat-down search of his person for weapons.

At the outset, we observe, as the Attorney General concedes, that this was not a search incident to a lawful arrest, because the officer lacked probable cause for an arrest. If the seizure of the narcotics is to be upheld, it can only be justified as a protective "frisk" for weapons. In *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the United States Supreme Court recognized that "there must be a narrowly drawn authority to permit a reasonable search for weapons for the protection of the police officer, *where he has reason to believe he is dealing with an armed and dangerous individual*, regardless of whether he has probable cause to arrest the individual for a crime." (Emphasis added) The Supreme Court explained the right of police officers to conduct a protective frisk in *Sibron v. New York*, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968), decided the same day as *Terry*. In *Sibron*, the Court stated, "In the case of the self-protective search for weapons, he [the po-

lice officer] must be able to point to particular facts from which he reasonably inferred that the individual was armed and dangerous."

In the case at bar, none of the circumstances preceding the search of the defendant for weapons justified a reasonable suspicion that he was armed and dangerous. Officer Allen testified that as the search was being conducted he heard a vehicle park in front of the apartment. He saw the defendant and two other persons emerge from the vehicle and approach the front door. As the group reached the front door, Officer Allen saw the defendant use a key to unlock the door. As the defendant entered the apartment, Officer Allen identified himself as a police officer and ordered the defendant at gunpoint to place his *hands behind his head. The officer then* searched the defendant for weapons and found a pill bottle in defendant's left front pants pocket. The only justification Officer Allen gave for the search was that he wanted to ensure his safety. On cross-examination the officer testified that the defendant did not make any sudden moves and, furthermore, the defendant did not resist or attempt to escape.

This case is similar to the recent United States Supreme Court case of *Ybarra v. Illinois*, —— U.S. ——, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979), where officers had a warrant to search a bar and its bartender, but not to search any of its patrons. They did a pat-down search of all the patrons anyway—not because they had a specific reason to believe there was a danger, but just on general principles. The Supreme Court ruled that the pat-down was a violation of the Fourth and Fourteenth Amendments:

". . . . But, a person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause to search that person. . . ." (Citations omitted)

In the record before us, we are unable to find any factual basis to justify

Officer Allen's suspicion that the defendant was armed and dangerous. When a protective search is not based on objective criteria, the risk of arbitrary and abusive police practices exceeds tolerable limits. Accordingly, we hold that except in those situations in which there is at least articulable and reasonable suspicion that an individual is armed and dangerous, a protective search for weapons is unreasonable under the Fourth Amendment as applied to the states by the Fourteenth Amendment.

We do not hold today that police officers may never conduct a protective search of individuals present during the execution of a search warrant. Where there are facts in the record which reasonably support an officer's suspicion that the individual or individuals with whom he is dealing may be armed, such a search would be justified.

Since we have concluded that the pat-down search of the defendant was unreasonable, it necessarily follows that the fruits thereof were inadmissible as evidence against him.

For the foregoing reasons, the judgments and sentences appealed from are hereby *REVERSED* and *REMANDED*.

CORNISH, P. J., concurs in results.

BRETT, J., concurs.