Gary Ray BEASLEY, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F-80-703.

Court of Criminal Appeals of Oklahoma.

Oct. 15, 1981.

M. Jay Farber, Asst. Public Defender, Oklahoma County, Oklahoma City, for appellant.

Jan Eric Cartwright, Atty. Gen., Floyd W. Taylor, First Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

BUSSEY, Judge:

On appeal from the judgment and sentence rendered against him in Oklahoma County District Court, Case No. CRF–80–617, assessing a term of ten (10) years' imprisonment for the crime of Burglary in the Second Degree, After Former Conviction of a Felony, the appellant, Gary Ray Beasley, hereinafter referred to as the defendant, raises two assignments of error.

He asserts that the evidence was insufficient to support the conviction for the offense of Burglary in the Second Degree, After Former Conviction of a Felony, in that the State failed to establish a breaking and entering. The record reflects the following:

1. Mr. Whitehead, the shop foreman, testified he secured the premises located at 1661 Exchange, in Oklahoma City, prior to his leaving in the afternoon of February 8, 1980, and that he activated the burglar alarm system, which was connected to all the exterior doors and windows;

2. At approximately 11:10 p. m. on February 8, 1980, Officer George arrived at the premises at 1661 Exchange, in response to a communication that the burglar alarm system had been activated. While examining the exterior of the building, he observed the defendant attempting to flee. He arrested the defendant and found a manila envelope in his pants pocket, bearing the inscription "coffee money", and containing $1.75 in small change. The envelope and its contents were identified by Mr. Core, the office manager, as being the coffee money and envelope which he had placed in his desk, which he had locked prior to leaving work on February 8, 1980;

3. An examination of the exterior and interior of the building revealed the following: a padlock on the wooden door on the east side of the building had been pried open; the interior of the building was in disarray; the desk which had contained the coffee money had been pried open; the safe had been moved, and a chisel found next to it; a corduroy coat was found four (4) or five (5) feet from the safe; and a screwdriver was found near a broken window;

4. The padlock, which had secured the exterior of the wooden door on the east side of the building, had been locked on the afternoon of February 8, 1980, but subsequent to 11:10 p. m. that day, the lock, which had been pried open, would no longer close.

■ Although the evidence of breaking and entering was totally circumstantial, it was ample to support the verdict of the jury and we will not interfere with the verdict of the jury. See *Smith v. State*, 599 P.2d 413 (Okl.Cr.1979).

■ As his final assignment of error the defendant contends that the court erred in failing to grant a mistrial, when on defense counsel's motion, he stated that the following colloquy occurred:

"Right after we recessed at the noon hour, myself and a bondsman got in the elevator along with Mrs. Floyd who's a juror in this case. And the officer, as the door was about to close, came in and blurted out the following statement: 'Al, couldn't you get him to take anything this time?' And I retorted and said: 'He's innocent.' He said, 'I'll bet,' and started laughing. He apologized later,

not knowing that this was a juror in there. I think that highly prejudices my cause and I'd ask for a mistrial."

Thereafter, the trial court carefully examined the juror[1] and concluded that the inadvertent remarks of Officer George did not prejudice the juror. The record amply supports the judge's ruling. See *Hayes v. State*, 397 P.2d 524 (Okl.Cr.1964).

Accordingly the judgment and sentence is AFFIRMED.

BRETT, P. J., and CORNISH, J., concur.

1. THE COURT: Would you draw any adverse conclusions against the defendant from that bit of conversation?

MRS. FLOYD: No, I wouldn't.

THE COURT: Do you think—

MRS. FLOYD: But I knew it would concern the attorney, I can understand that. And, no, I wouldn't.

THE COURT: Would you be inclined to be prejudiced against him in any way for having heard that?

MRS. FLOYD: No.

THE COURT: Mr. Hambrick, do you have any questions?

MR. HAMBRICK: Yes. The fact that what you heard though, it gives you some indication or an inference that maybe this man has been in trouble before, doesn't it?

MRS. FLOYD: Yes, it does.

MR. HAMBRICK: And even though consciously you try to fight against that, isn't that true, but subconsciously you don't know what will happen to you, do you?

MRS. FLOYD: No, that's right.

MR. HAMBRICK: And it could have a deleterious effect on this trial maybe if subconsciously you let that effect you?

MRS. FLOYD: I don't think it would. I can see your concern.

MR. HAMBRICK: Yes. And have you talked and mentioned this to any other juror?

MRS. FLOYD: Oh, no. You can ask them. I did not mention it to them on purpose, I didn't, because I was sworn not to discuss it.

And I did not even tell them I had ridden down on the elevator with you.

THE COURT: Anything further?

MRS. FLOYD: But I hope you'll tell them so they won't think I've done something wrong.

MR. MILDFELT: Judge, I'd like to ask one question if I can.

Mrs. Floyd, can you tell us now that you can put that inference out of your mind and not consider it—

MRS. FLOYD: Oh, I wouldn't consider it.

MR. MILDFELT: —when you determine whether the defendant is guilty or not?

MRS. FLOYD: I wouldn't because there is too much at stake, I mean, after all.

MR. MILDFELT: Secondly, since we—

MRS. FLOYD: I understand what you all are concerned about, but no, I have not made up my mind whether he's guilty or not guilty yet. I haven't heard all the testimony.

MR. MILDFELT: Since we have raised this and you, of course, have been singled out to come back here in chambers and these issues have been raised to you, do you think you would harbor any prejudice that you have to bend over backwards against the State now because this has happened?

MRS. FLOYD: No.

MR. MILDFELT: Can you just keep an open mind and try it fairly?

MRS. FLOYD: Yes, I feel like I have an open mind up to now.