**Billy Jack GUANCE, Appellant,**

v.

**STATE of Oklahoma, Appellee.**

No. F–86–264.

Court of Criminal Appeals of Oklahoma.

March 2, 1988.

D. Clay Mowdy, Coalgate, for appellant.

Michael C. Turpen, Atty. Gen., Tomilou Gentry Liddell, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

PARKS, Judge:

Billy Jack Guance, A/K/A Joseph Allen Guance, appellant, was tried by jury and convicted of Shooting With Intent to Kill [21 O.S. 1981, § 652], in Case No. CRF–85–100, in the District Court of Atoka County, the Honorable Douglas Gabbard, II, District Judge, presiding. The jury assessed punishment at life imprisonment. Judgment and sentence was imposed in accordance with the jury's verdict. We affirm.

On June 11, 1985, appellant and his half-brother, Charles Michael Bear, rode a motorcycle from Paris, Arkansas, to String-town, Oklahoma, and stopped at a liquor store. As Bear exited from the liquor store parking lot, Officer Ronald Marley of the Stringtown Police clocked the motorcycle's speed at 67 m.p.h. in a 55 m.p.h. zone. Officer Marley pulled Bear over to the shoulder of the highway. Bear did not have a driver's license, and Officer Marley asked him to sit in the front passenger seat of the patrol car. As Officer Marley interviewed Bear, appellant dismounted from the motorcycle and walked to the front bumper of the patrol car. Appellant pulled a .38 special revolver, leaned down the hood and, holding the pistol about three feet from the windshield, fired three shots at Officer Marley. Bear reached inside his boot and pulled a .32 caliber revolver, which he fired at Officer Marley. Officer Marley bailed out of the patrol car and dropped his service revolver, apparently because one of the shots severed a nerve in his right arm which controls use of the hand. Officer Marley ran towards the back of the cruiser. Appellant picked up Officer Marley's .357 Magnum revolver and, as Officer Marley ran, emptied both pistols at Marley, who fell about eight feet behind the cruiser. A total of fifteen rounds were fired at Officer Marley, who was shot once each in the chin, the chest, and in both arms.

Bear and appellant fled on the motorcycle, which they ditched in some tall weeds by a railroad track about four miles from the shooting, and ran into the woods on foot. After finding the abandoned motorcycle, the Highway Patrol called for a tracking team from the McLoed Correctional Center. The dogs tracked appellant and Bear to the banks of the Muddy Boggy River. Both men were unarmed when captured. Appellant spontaneously told the trackers, "I did it. I did it. My brother didn't have anything to do with it." Appellant also voluntarily told the trackers where he threw the guns in the river. The following day, appellant and Bear voluntarily confessed to shooting Officer Marley and led the officers to the river, where the Lake Patrol recovered the three pistols: appellant's .38 special revolver, Bear's .32

caliber revolver and Officer Marley's .357 Magnum.

■ For his first assignment of error, appellant asserts the trial court fundamentally erred by overruling his motion for psychiatric examination. Appellant relies primarily in support of his proposition on *Ake v. Oklahoma*, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985). We find that appellant failed to establish a threshold showing to the trial judge that his sanity was a significant factor in his case.

Appellant filed a motion to be sent to Eastern State Hospital at Vinita, Oklahoma, for observation to determine both his present competency to stand trial and his sanity at the time of the offense. [O.R. 23] On hearing, appellant informed the trial court that his mother wanted him to be examined. "I mean, my mom told me to ask for help, I didn't want to ask for it." [Tr. 11] Appellant claimed he was subject to blackout spells and had injured his mother, sister and brother-in-law while blacked out. Appellant claimed he shot Officer Marley during one of these blackout spells and did not realize what he had done until he got to the woods. [Tr. 10–11] The trial court found insufficient evidence to commit appellant for observation.

In *Ake*, the Supreme Court found that "where a defendant demonstrates to the trial judge that his sanity at the time of the offense is to be a significant factor at trial, the State must, at a minimum, assure the defendant access to a competent psychiatrist who will conduct an appropriate examination and assist in evaluation, preparation, and presentation of the defense." *Id.* at 83, 105 S.Ct. at 1097.

This case differs significantly from *Ake*. First, appellant's conduct was not such as to prompt the trial judge *sua sponte* to have appellant examined for competency. Appellant's competency to stand trial was never seriously at issue. Second, appellant claimed he blacked out and did not remember shooting Officer Marley, yet appellant's voluntary confession, which was available to the trial judge at the time of the hearing, described appellant's actions in detail, step-by-step, when he shot Officer

Marley, negating his claim that he blacked out at the time of the offense. Third, appellant asked to be sent to Vinita for observation but never asked the court to appoint a psychiatrist to assist in evaluation, preparation or presentation of an insanity defense, nor did appellant request funds with which to hire a psychiatrist. Fourth, appellant did not raise an insanity defense at trial, choosing instead to stand on the weaknesses of the State's case, and the State did not present expert witnesses at trial to testify as to appellant's mental state at the time of the crime. We find that appellant failed to demonstrate to the trial judge that insanity would be a significant factor at trial. This assignment of error is without merit.

For his third assignment of error, appellant asserts he was denied his Sixth Amendment rights because of ineffective assistance of counsel. Appellant identifies three areas in which his counsel was allegedly ineffective: when counsel did not subpoena witnesses to testify at the hearing on the motion to be sent to Vinita for observation; when counsel failed to object to punishment being imposed in a bifurcated proceeding rather than in a single stage proceeding; and when counsel failed to raise a defense of temporary insanity at trial. We review the allegations in the order listed.

■ The standard of review for ineffective assistance of counsel is two-pronged: first, appellant must show that counsel's performance was deficient; second, appellant must show that the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668,, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional conduct, i.e., appellant must overcome the presumption that, under the circumstances, counsel's conduct constituted sound trial strategy. *Id.* at 689, 104 S.Ct. 2065.

■ At the hearing on appellant's motion to be sent to Vinita for observation, appellant testified that he previously injured his mother, sister and brother-in-law while blacked out. Counsel did not subpoena these witnesses, and they did not attend

the proceeding. The trial court questioned both appellant and his counsel whether the testimony of these witnesses would be the same or add anything additional to appellant's testimony. Both responded, in effect, that the testimony of the witnesses would be cumulative. [Tr. 11–12] Inasmuch as the testimony of the absent witnesses would have been merely cumulative, we find that counsel's failure to subpoena the witnesses did not change the outcome of the proceeding and did not prejudice appellant's defense.

■ Appellant argues that counsel's conduct was deficient because he permitted appellant's punishment to be assessed in a bifurcated proceeding rather than have his punishment assessed at the same time that the jury determined guilt. The gravamen of appellant's complaint is, because his half-brother previously had been convicted of murder in Texas and was charged with committing this crime after former conviction of a felony, appellant was prejudiced by having his punishment assessed at the same time as his brother. We disagree.

The court minute of the pretrial conference reflects: "4. Defendant Guance and his attorney thereupon request the Court to allow punishment to be determined in a second stage in the event that he is found guilty in the first stage of the trial." [O.R. 69] The transcript of the pretrial conference reveals that the trial judge explained to appellant that he had the right to have guilt and punishment determined in a first stage proceeding, rather than have his punishment assessed with his brother at a second stage proceeding. Appellant expressly agreed to have his punishment assessed at the second stage proceeding. [Tr. 7] Appellant can hardly complain that counsel's conduct was deficient by permitting this to happen, when appellant requested the very proceeding he now claims prejudiced him.

■ Finally, appellant asserts that counsel's conduct was deficient because he failed to raise an insanity, or temporary insanity, defense at time of trial. The record reflects:

[The Court]: Okay, Mr. Guance ... you have stated previously in the Court that you had a defense a possible defense of perhaps temporary insanity. I understand that you have certain witnesses here who could testify in your behalf if you desire that they do so. But, according to what your attorney has stated it is your intention at this time to not present a defense but to stand on the weaknesses of the State's case, is that correct—you need to answer out loud.

[Mr. Guance]: Yes, Sir. [Tr. 382–83]

Again, appellant can hardly complain that counsel's conduct was deficient in failing to raise a temporary insanity defense at trial, when counsel had witnesses available who would testify to appellant's alleged blackouts but appellant elected to stand on the weaknesses of the State's case and removed this tool from counsel's hands. This assignment of error is without merit.

■ For his final assignment of error, appellant asserts he was denied a fair trial because the prosecutor used leading questions in direct examination and made improper statements during closing argument. "[A] criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone, for the statements or conduct must be viewed in context; only by so doing can it be determined whether the prosecutor's conduct affected the fairness of a trial." *United States v. Young*, 470 U.S. 1, 11, 105 S.Ct. 1038, 1044, 84 L.Ed.2d 1 (1985). In reviewing the prosecutor's remarks here, we find that, "[v]iewed in context, the prosecutor's statements, although inappropriate and amounting to error, were not such as to undermine the fundamental fairness of the trial and contribute to a miscarriage of justice." *Id.* at 16, 105 S.Ct. at 1047. *See also Hope v. State*, 732 P.2d 905, 907 (Okla. Crim.App.1987). This assignment of error is without merit.

Accordingly, for the foregoing reasons, the appellant's judgment and sentence should be, and hereby is, AFFIRMED.

BRETT, P.J., and BUSSEY, J., concur.