William Patton LOMAN, II, Appellant,

v.

STATE of Oklahoma, Appellee.

No. F–87–813.

Court of Criminal Appeals of Oklahoma.

Feb. 22, 1991.

Jamie D. Pybas, Asst. Appellate Public Defender, Norman, for appellant.

Robert H. Henry, Atty. Gen., Steven Spears Kerr, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

LUMPKIN, Vice Presiding Judge:

Appellant William Patton Loman, II was tried by jury and convicted in the District Court of Leflore County, Case No. CRF–86–341, for the offenses of Burglary, First Degree, After Former Conviction of a Felony (Count I) in violation of 21 O.S.1981, § 1431, and Burglary, Second Degree, After Former Conviction of a Felony (Count II) in violation of 21 O.S.1981, § 1435. The jury recommended punishment of fifteen (15) years imprisonment in Count I and ten (10) years imprisonment in Count II. The trial court sentenced accordingly, and it is from this judgment and sentence that Appellant now appeals. We affirm.

On the 18th of December, 1986, eighty-two (82) year old Hilda Goodwin returned to her home in Poteau, Oklahoma, at approximately 9:35 p.m. to find she had been the victim of a burglary. The front door, locked prior to leaving for a meeting two hours previously, had been unlocked and the house ransacked. All the chair and sofa cushions were strewn about the living room, all the drawers and cabinets in the kitchen had been opened, desk drawers were emptied onto the floor and boxes of canceled checks and bank statements thrown around the room. In her bedroom, Mrs. Goodwin discovered that her closet had been ransacked and jewelry thrown on the bed.

Responding to Mrs. Goodwin's call, the police determined that entry to the house had been made through the utility room window. The window had been broken by a rock, which was discovered inside the house, near the window. Police also discovered a large heavy duty snap lying beneath the window. Items taken from Mrs. Goodwin's home included various pieces of jewelry, including several lady's gold and diamond rings, a man's gold and diamond ring, several old coins, and a flashlight.

That same evening, seventy-six (76) year old Julia Henson was alone in her home in Poteau when the doorbell rang. Afraid to answer the door at night, she let the bell ring. After a few minutes, the ringing stopped. Mrs. Henson then heard someone

walk around the side of her house and take the screens off the window. Mrs. Henson immediately phoned the police and her neighbors. The ensuing police investigation revealed a broken window in the southeast bedroom and a brick lying near it. The window had been unlocked and raised slightly. Nothing was taken from Mrs. Henson's home.

Appellant and co-defendant Charles Miles were apprehended approximately 100 yards from Mrs. Henson's home by officers responding to the Henson burglary call. A subsequent search of Appellant yielded the flashlight, stolen from Mrs. Goodwin, in his coat pocket and the stolen jewelry and coins in his jeans pockets. His coat was missing a snap.

At trial, both Miles and Appellant testified that they had been together early that evening but had separated for a while and met again later. Miles testified that he committed the burglaries alone during the time he was separated from Appellant. When Miles and Appellant met again, they switched coats. Appellant denied any guilt in connection with the burglaries.

On rebuttal, the State presented the testimony of Jerry Tamplin, an investigator for the Poteau Police Department. Detective Tamplin testified that on December 18, 1986, he interviewed the Appellant and co-defendant Miles at the Poteau Police Station. After receiving the *Miranda* warning, Miles waived his rights and agreed to give only an oral statement. He stated that both he and Appellant had entered Mrs. Goodwin's home, but they had only broken a window at Mrs. Henson's home when they were scared off. Tamplin talked with Miles again the next day and Miles repeated the statements given the previous day.

Tamplin did not speak with Miles again until approximately one month later, when he was informed by jailers that Miles wanted to talk with him. Meeting in the sheriff's office, Miles told Tamplin that he alone broke into Mrs. Goodwin's. He then went to JR's Food Market and met the Appellant. The men then traded coats, as Miles was wearing Appellant's coat. They were arrested shortly thereafter. Minutes after this meeting concluded, Tamplin again received a phone call that Appellant wanted to meet with him to inquire as to why he was still in jail.

■ In his first assignment of error, Appellant contends that the evidence was insufficient to sustain a conviction for first degree burglary of the Henson residence. Specifically, Appellant alleges that the element of entering was not proven. As his authority, Appellant relies on the established rule that the State must prove each and every material element of the crime charged beyond a reasonable doubt. However, it is also a well settled rule that essential elements of a criminal offense may be proven circumstantially. *See Slavens v. State*, 559 P.2d 1258, 1261 (Okl.Cr. 1977). Although the State's case against Appellant consists almost entirely of circumstantial evidence, such evidence will be sufficient if the circumstances are "inconsistent with any reasonable hypothesis other than the defendant's guilt." *Hager v. State*, 612 P.2d 1369, 1372 (Okl.Cr.1980).

The record reflects that the screen on the window of the southeast bedroom of Mrs. Henson's home had been removed and a brick thrown through the window. The brick left a hole in the middle of the window, penetrating the double panes of glass. When the police arrived on the scene, the window was raised slightly, approximately one-eighth of an inch, and was unlocked. Mrs. Henson testified that the window had double locks on it which, as a regular practice, were locked. She testified that the window was locked the night of December 18th. On cross-examination, she stated that she did not see anyone enter her home.

Officer Branscum of the Poteau Police Department testified that his investigation of the scene showed the window to be unlocked. On cross-examination, he stated that no actual physical entry to the house had been made. On redirect examination, he stated that he assumed that an attempt at entry had been made because the window was unlocked and raised slightly. On recross-examination, he stated that an individual could have reached through the hole

in the window and unlocked it before the police arrived on the scene. Poteau Police Officer Tamplin also testified that the broken window was unlocked and in order to unlock such a window, an individual would need to reach through the hole in the window or be inside the house.

The trial court defined the element of entering for the jury as "any entry which occurs when any part of a persons body is within the dwelling". (O.R. 69) We find that the State presented sufficient evidence to show that the Appellant reached through the hole in the window and unlocked it. *See Lucero v. State*, 717 P.2d 605, 607 (Okl.Cr.1986); *Beasley v. State*, 635 P.2d 627, 628 (Okl.Cr.1981), (sufficient circumstantial evidence of breaking and entering presented). Although there was conflict in the testimony, we find competent evidence exists to support the jury's finding, therefore this Court will not disturb the verdict on appeal. *Enoch v. State*, 495 P.2d 411, 412 (Okl.Cr.1972). *See also Smith v. State*, 599 P.2d 413 (Okl.Cr. 1979). Accordingly, this assignment of error is denied.

■ In his second assignment of error, Appellant contends the trial court erred in failing to give an instruction on the lesser included offense of attempted first degree burglary. The record reflects that Appellant neither requested such an instruction at trial nor objected to the absence of the instruction. It is well established that when the defendant fails to object to instructions and fails to submit written requested instructions as to lesser included instructions, where the instructions given adequately cover the subject matter of inquiry, any error is waived. *Russell v. State*, 763 P.2d 1180, 1182 (Okl.Cr.1988). In the present case, the evidence showed only that Appellant was either guilty or innocent of first degree burglary, and not merely attempt. Therefore, the absence of an instruction on the lesser included offense is not error. *See Rawlings v. State*, 740 P.2d 153, 160 (Okl.Cr.1987); *Collums v. State*, 654 P.2d 1070, 1072 (Okl.Cr.1982).

In his third assignment of error, Appellant argues that his detention by Officers Waddle and Noggle and subsequent search was unreasonable as it was based upon mere suspicion of criminal activity. Therefore, Appellant contends, the trial court erred in failing to grant his motion to suppress all evidence obtained as a result of the illegal search and seizure.

The record shows that the officers were directed to respond to the burglary call from Mrs. Henson's home and were informed by Officer Branscum to be on the alert for someone that would be in possession of the stolen jewelry and someone wearing a jacket with a snap missing. As the officers approached Mrs. Henson's home, they observed the Appellant and Miles, approximately 100 hundred yards from the home, walking away from it. Both officers recognized Appellant, dressed in blue jeans and a black coat, from his previous contacts with law enforcement. Appellant's coat was missing a snap from the lower left side. Appellant and Miles were detained and questioned by the officers. Questioning the Appellant, Officer Noggle noticed a large bulge in the upper left pocket of Appellant's coat. Fearing Appellant's possession of a weapon, Noggle conducted a pat-down search and discovered a six inch long flashlight. Noggle also observed a large bulge in the front right pocket of Appellant's jeans. This contained jewelry, later identified as that stolen from Mrs. Goodwin's home. Noggle then placed Appellant under arrest and read him the *Miranda* warning.

The Fourth Amendment to the United States Constitution prohibits only unreasonable searches. Therefore, "[t]he touchstone of our analysis under the Fourth Amendment is always 'the reasonableness in all the circumstances of the particular governmental invasion of a citizens personal security.' " *Pennsylvania v. Mimms*, 434 U.S. 106, 109, 98 S.Ct. 330, 332, 54 L.Ed.2d 331 (1977), quoting *Terry v. Ohio*, 392 U.S. 1, 19, 88 S.Ct. 1868, 1878, 20 L.Ed.2d 889 (1968). The reasonableness will vary with the circumstances of each search.

■ Under appropriate circumstances police officers, in the course of their duty,

may approach and question suspicious individuals in order to determine their identity or to maintain the status quo momentarily while obtaining more information, even though there are insufficient grounds for arrest. *Adams v. Williams,* 407 U.S. 143, 147, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612 (1972); *Terry v. Ohio,* 392 U.S. at 22, 88 S.Ct. at 1880; *United States v. Saldana,* 453 F.2d 352, 354 (10th Cir.1972); *Atterberry v. State,* 726 P.2d 898 (Okl.Cr.1986); *Dentis v. State,* 578 P.2d 362, 363 (Okl.Cr. 1978); *Post v. State,* 563 P.2d 1193, 1195 (Okl.Cr.1977); *Prock v. State,* 542 P.2d 522, 526 (Okl.Cr.1975). Before the officer can legally place a hand on an individual in search of anything, he must have constitutionally adequate and reasonable grounds for doing so. In the case of a self-protective search for weapons, he must be able to point to particular facts from which he reasonably inferred that the individual was armed and dangerous. *Terry v. Ohio,* 392 U.S. at 27, 88 S.Ct. at 1883; *Sibron v. New York,* 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968). When an officer is justified in believing that the individual whose behavior he is investigating at close range is armed and dangerous to the officer and others, he may conduct a limited protective search for concealed weapons. *Pennsylvania v. Mimms,* 434 U.S. 106, 113, 98 S.Ct. 330, 334, 54 L.Ed.2d 331 (1977); *Adams v. Williams,* 407 U.S. at 147, 92 S.Ct. at 1923; *Terry v. Ohio,* 392 U.S. at 30, 88 S.Ct. at 1884; *Bell v. State,* 608 P.2d 1159, 1160 (Okl.Cr.1980).

■ In the present case, the officers, having been dispatched at approximately 10:30 p.m. to the scene of a felony committed within the hour, observed the Appellant and co-defendant Miles approximately 100 yards from the scene of the crime. Appellant was wearing a jacket with a snap missing from the lower left side. Under these circumstances the officers were justified in stopping and questioning Appellant. Once Appellant was lawfully detained and the bulge in his coat visible, Officer Noggle had reasonable cause to fear for his safety and properly conducted a pat-down search for weapons. As the pat-down search revealed no weapons, even though it was reasonable as a part of the pat-down to remove the flashlight, Officer Noggle was not entitled, under the dictates of *Terry,* to conduct a further search of Appellant.

■ At trial, defense counsel elicited testimony from Noggle that the bulge in Appellant's jeans was noticeable only close up. Although no evidence was presented to show the condition of the jewelry upon discovery, we fail to see how three rings, a gold chain and a bracelet could produce such a bulge in Appellant's pocket as to cause the officer to conduct a weapons search. Although improperly seized during a limited search for weapons, this does not result in an automatic exclusion of the jewelry.

In six specifically established situations a warrantless search may withstand constitutional scrutiny. The burden rests on the State to show the existence of such an exceptional situation. *Vale v. Louisiana,* 399 U.S. 30, 90 S.Ct. 1969, 1972, 26 L.Ed.2d 409 (1970). The State has shown in the present case that the exigency of the situation, when combined with the probable cause for the initial stop, made it reasonable for the officer to retrieve the jewelry. Both the United States Supreme Court and this Court have recognized that exigent circumstances plus probable cause may justify a warrantless search. *Preston v. United States,* 376 U.S. 364, 366, 84 S.Ct. 881, 882, 11 L.Ed.2d 777 (1964); *Chaney v. State,* 612 P.2d 269, 277 (Okl.Cr.1980), modified on other grounds, *sub. nom. Chaney v. Brown,* 730 F.2d 1334 (10th Cir.1984). If the time required to secure a warrant could result in the loss of evidence or the escape of a suspect, the law enforcement officials may act without a warrant if probable cause exists. *Smith v. State,* 695 P.2d 864, 867 (Okl.Cr.1985); *Hughes v. State,* 552 P.2d 1154 (Okl.Cr.1976).

Here, the risk of Appellant and Miles escaping the officers' custody and easily disposing of the stolen jewelry and coins produced an exigent situation. Combined with the probable cause, based upon the Appellant's prior contact with Mrs. Goodwin, close proximity to the Henson home

immediately after the break-in, the missing snap from the jacket, and possession of the flashlight, these facts warranted the search of Appellant's jeans pockets. Considering the existence of probable cause, coupled with exigent circumstance and potentially easy disposition of the evidence, we cannot say this very limited intrusion violated the Fourth Amendment. *See Cupp v. Murphy,* 412 U.S. 291, 93 S.Ct. 2000, 36 L.Ed.2d 900 (1973); *Vale v. Louisiana,* 399 U.S. 30, 90 S.Ct. 1969, 26 L.Ed.2d 409 (1970). Therefore, the trial court did not err in denying Appellant's motion to suppress and this assignment of error is denied.

■ Appellant contends in his fourth assignment of error that the trial court erred in failing to give a cautionary instruction on eyewitness identification. Appellant argues that a cautionary instruction was warranted by the identification testimony of Mrs. Henson. However, the record reveals that Mrs. Henson never identified the intruder to her home. Rather it was Mrs. Goodwin who testified that two weeks prior to the burglary of her home, her neighbor had introduced her to a young man named Billy Loman. She stated that she did not take "any notice of the boy" and did not remember his features. Mrs. Goodwin was not able to identify the Appellant as the man she met that day, nor was she able to identify the Appellant as the person who burglarized her home.

In *Davis v. State,* 753 P.2d 388, 392 (Okl.Cr.1988), we referred to our decision in *McDoulett v. State,* 685 P.2d 978, 980 (Okl.Cr.1984), that a cautionary instruction should only be given in cases in which the eyewitness identification is a critical element of the prosecution's case and serious questions exist concerning the reliability of that identification. In the present case, the identification of the Appellant by either victim was not a critical element of the State's case. Therefore, it was not error for the trial court to refuse the Appellant's requested instruction. Accordingly, this assignment of error is denied.

■ In his final assignment of error, Appellant contends that he was denied a fair trial through prosecutorial misconduct. Specifically, Appellant argues that the prosecutor improperly attempted to arouse the sympathy of the jury by inquiring into the personal repercussions of the burglary upon Mrs. Henson. The Appellant's objection to the inquiry was overruled.

In *Nobles v. State,* 668 P.2d 1139 (Okl.Cr. 1983), citing to *Sands v. State,* 542 P.2d 209 (Okl.Cr.1975), we stated that the determination of whether or not conduct or remarks of counsel will serve as a basis for reversal is contingent upon the effect which said remarks have on the rights of the defendant. "[A] criminal conviction is not to be lightly overturned on the basis of prosecutorial comment standing alone, for the statements or conduct must be viewed in context; only by so doing can it be determined whether the prosecutor's conduct affected the fairness of the trial." *Guance v. State,* 751 P.2d 1074, 1077 (Okl. Cr.1988), citing *United States v. Young,* 470 U.S. 1, 11, 105 S.Ct. 1038, 1044, 84 L.Ed.2d 1 (1985). Further, we have repeatedly held that in order for the remarks of the prosecuting attorney to constitute reversible error, they must be flagrant and of such a nature as to be prejudicial to the defendant. *Collins v. State,* 758 P.2d 340, 341 (Okl.Cr.1988); *Wimberli v. State,* 536 P.2d 945, 952 (Okl.Cr.1975); *Pickens v. State,* 450 P.2d 837 (Okl.Cr.1969).

In the present case, although the inquiry into the aftereffects of the robbery upon Mrs. Henson was improper, the inquiry constituted only a small portion of the direct examination and was not so flagrant as to undermine the fundamental fairness of the trial. Therefore, we find that Appellant was not denied a fair trial by the conduct of the prosecutor and this assignment of error is denied.

After review of the errors alleged by Appellant, we are unable to conclude that any error has occurred which requires either reversal or modification of Appellant's sentence. Accordingly, the judgment and sentence is AFFIRMED.

LANE, P.J., and BRETT, PARKS and JOHNSON, JJ., concur.