**Preston Dale COSGROVE and Henry Travis Cosgrove, Appellants,**

v.

**STATE of Oklahoma, Appellee.**

**No. F–89–1333.**

Court of Criminal Appeals of Oklahoma.

Feb. 5, 1991.

Rehearing Denied March 18, 1991.

**76**

Warren Gotcher, Gotcher, Brown, Bland & Belote, McAlester, for appellants.

Robert H. Henry, Atty. Gen., Wellon Poe, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

LANE, Presiding Judge:

Appellants were convicted of Conspiracy to Cultivate Marijuana (21 O.S.1981, § 421) and Cultivation of Marijuana (63 O.S.Supp. 1987, § 2–509) after a trial by jury in District Court of Pittsburg County, Case No. CRF–88–282. Punishment was assessed at ten (10) years incarceration for each count along with a five thousand dollar ($5000.00) fine for the Conspiracy charge and a twenty-five thousand dollar ($25,000.00) fine for the Cultivation charge. In this joint appeal, Appellants raise five allegations for our review; that the State failed to prove that they owned or were in control of the property where the marijuana was being grown, that the magistrate failed to arraign them on the conspiracy count, that their statements as co-conspirators were improperly admitted, that the evidence against them was illegally seized and that the prosecutor committed reversible error

by failing to disclose all the evidence as previously agreed and by making certain statements during his closing argument. We disagree with these contentions and affirm the convictions.

Appellants were arrested after Pittsburg County Deputy Sheriff, Jerome Amaranto observed five large patches of marijuana growing on property leased or owned by Appellants. Amaranto saw the area of cultivation as he flew over the area in an airplane. He could see several stock tanks full of water, as well as a man on a three-wheeler driving towards the marijuana. Amaranto radioed in a report and directed another officer to meet him at the field where the marijuana was growing.

As the officers arrived at the Cosgrove property, they drove across the property and through at least two gated fences before reaching the plants. Prior to going out to the field, which was approximately one mile from the Appellants' house, Amaranto stopped and spoke to Dale Cosgrove. Dale asked the officer if it had been him flying by in the plane. The officer responded affirmatively and asked if Dale had been the man on the vehicle. Dale said that it was and asked if he could go out to the field with the officers. That request was denied.

At the field, officers found a large quantity of marijuana plants, five tanks of water, water pumps and hoses feeding into the tanks from a nearby creek, plant food, insecticide and a manual on growing marijuana. Several days later, a search warrant was obtained and two three-wheelers were seized from a shed near Appellants' house. Officers also obtained more plant food, several kinds of insecticide and a sprayer, hose fittings and an electrical device for measuring the plant food.

As their first assignment of error, Appellants claim that the State's evidence failed to prove that they had possession or control of the property where the marijuana plants were growing. We disagree. The first witness in the trial was Francis Stipe. He testified that he and his brother Gene Stipe owned the property involving 5,477 acres and that in 1988 they had

leased the entire tract to Appellants with the understanding that Appellants would purchase the property within the year. The former foreman of the Stipe ranch testified that he was familiar with the boundaries of the ranch and that the area where the marijuana was found was within the boundaries of the leased property. Additionally, Dale Cosgrove admitted that he was out in that section of the property on a three-wheeler when Amaranto flew overhead. There was a well traveled road leading through two gates across Appellants' property into the area where the plants were growing. We find that this is sufficient evidence to establish that Appellants had possession and/or control of the area where the cultivation was occurring. This evidence is enough to sustain the State's burden in this regard. *See State v. Swicegood*, 795 P.2d 527 (Okl.Cr.1990); *Carter v. State*, 779 P.2d 996 (Okl.Cr.1989).

■ Both the second and third propositions raised by Appellants concern their allegation that they were never ordered bound over for trial on the charge of Conspiracy to Cultivate Marijuana. In connection with this claim, Appellants assert that because the trial court was without jurisdiction to hear the conspiracy charge, the hearsay statements of the two defendants were improperly admitted against the other as co-conspirator. The facts of the case reveal that the issues identified here are not well taken.

The problem identified by Appellants concerns the contents of the order issued by the magistrate after Appellants announced that they would waive preliminary examination. The order of the magistrate indicated that Appellants should be bound over on Count one, Cultivation of Marijuana. There was no mention of Count two. At a hearing on this issue prior to trial the magistrate testified that the order had been prepared by the clerk who had looked only at the original Information, naming only one count, rather than the amended Information which alleged both the counts for which Appellants were tried. He testified that when Appellants waived preliminary examination, he intended for them to be bound over for trial on both counts. At the close of the hearing, the trial court held that the bind over order contained a scrivener's error and ordered that it be corrected, *nunc pro tunc.*

We find that the trial court reached the proper conclusions. Appellants did not raise the issue until immediately before trial and there are no allegations that either of them were mislead. In addition to the trial court's corrective actions, Appellant's failure to object, prior to the entry of their plea, to proceeding on both counts contained in the Information, waives any potential error. *Allen v. State*, 734 P.2d 1304, 1306 (Okl.Cr.1987). Accordingly, we will not interfere with the decision of the trial court.

The second portion of Appellants' arguments in regard to the conspiracy charge concerns the introduction of hearsay statements by co-conspirators. Appellants concede that such testimony is proper in a conspiracy case. *Laske v. State*, 694 P.2d 536 (Okl.Cr.1985). Because we have found that Appellants were properly brought to trial on the charge of Conspiracy to Cultivate Marijuana, there is no longer an argument that the testimony was illegally admitted.

As their fourth assignment of error, Appellants claim that the trial court erred when it refused to grant their motion to suppress the evidence seized at the fields before a search warrant was obtained. Appellants argue that constitutional error was committed when the searching officers crossed the curtilage of their home to get to the field where the marijuana was growing. They claim that not only was this an illegal trespass, but also that officers observed items in the curtilage which were later identified in the affidavit offered in support of the warrant obtained several days later.

■ We will first address the trespass issue. There is no contention that the officers violated any principal of search and seizure law when they first observed the plants from the air or during the actual seizures which took place in the open field. These principals are well grounded in the

law. *See California v. Ciraolo,* 476 U.S. 207, 106 S.Ct. 1809, 90 L.Ed.2d 210 (1986); *Teague v. State,* 674 P.2d 560 (Okl.Cr. 1984). Instead, Appellants challenge the officer's entry onto the curtilage of their property in order to gain access to the field. We have previously dispensed with this argument on a number of occasions. In *Anderson v. State,* 658 P.2d 501, 503 (Okl.Cr.1983) and in *Luman v. State,* 629 P.2d 1275, 1276 (Okl.Cr.1981) we held that when the area to be searched was an open field, no violation of the Fourth Amendment occurs when the officers have to cross curtilage in order to get to the open field. We find the same to be true in this case. The officers did not undertake any sort of search except for that in the field until several days later, after they had obtained a warrant. Traveling down a road which ran through the curtilage area of the property did not violate any expectation of privacy, thus was not error.

■ The second allegation in this regard concerns the statement by Amaranto in his affidavit offered in support of the warrant that "While the other law enforcement officers and I were at the Ranch, I saw some plant food containers in a shed behind the house." In the hearing on the motion to suppress, testimony by Dale Cosgrove established that the shed in question was 50 to 100 feet away from the road leading to the fields and that the door was open and situated such that someone driving by could easily see into the shed. We have established that the initial intrusion onto the Cosgrove property which afforded the view of the plant food was lawful. Additionally, we believe that in a case where the defendants are suspected of cultivation of marijuana, the incriminating nature of the plant food was immediately apparent. Accordingly, we find that the sighting of the plant food containers clearly falls into the plain view exception to the Fourth Amendment. *Horton v. California,* 495 U.S. ——, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990). There is no error identified here.

In the final proposition of error, Appellants claim that the prosecutor violated the terms of a binding discovery agreement when he failed to make a fingerprint card and samples of the marijuana available for defense examination. These issues were fully discussed before the trial court before the exhibits were allowed to be introduced as evidence. In both cases, the court found, and defense counsel admitted, that the existence of the evidence had been properly disclosed, however, due to chain of custody requirements and the fact that the evidence was in Oklahoma City, rather than in the prosecutor's file, the actual exhibits were not produced before trial. No request was made by defense counsel to examine these items was made until after the State sought to introduce them at trial.

■ In *Brady v. Maryland,* 373 U.S. 83, 89, 83 S.Ct. 1194, 1197, 10 L.Ed.2d 215 (1963) the Supreme Court held that reversible error would be found when a prosecutor withholds evidence "on demand of an accused which, if made available, would tend to exculpate him or reduce the penalty...." We are not faced with that situation here. The prosecutor made the existence of the evidence and location of the evidence known to defense counsel. The basis of Appellants' complaint was not that the existence of the evidence was not disclosed, but that it was not provided to defense counsel. This is not a violation of *Brady.* Any prejudice caused to Appellants, none of which is identified in the briefs or at trial, was created by counsel's failure to request to see the evidence. The argument does not identify reversible error. *Shapard v. State,* 437 P.2d 565, 594 (Okl.Cr.1967). *See also Pierce v. State,* 786 P.2d 1255, 1262 (Okl.Cr.1990).

■ Appellants also complain about a comment made by the prosecutor during closing. The prosecutor stated: "Ladies and gentlemen of the jury, you can convict them and will convict them, based on this testimony this morning." After sustaining an appropriate objection, the trial court admonished the jury not to consider the comment and warned the District Attorney not to say such things in the future. This corrective action by the trial court was enough to cure any error which may have

resulted from the comment. *Patterson v. State,* 735 P.2d 338, 341 (Okl.Cr.1987); *Funkhouser v. State,* 734 P.2d 815 (Okl.Cr. 1987); *Kitchens v. State,* 513 P.2d 1300 (Okl.Cr.1973).

After review of the errors alleged by Appellants, we are unable to conclude that any error has occurred which requires either reversal or modification of the sentences. Accordingly, the judgment and sentences are AFFIRMED.

LUMPKIN, V.P.J., PARKS, P.J., and JOHNSON and BRETT, JJ., concur.