**Anthony Jerome HARRIS,**
**Plaintiff–Appellant,**

v.

**Ron CHAMPION, Warden; Susan Brim-**
**mer Loving \*, Attorney General for the**
**State of Oklahoma, Defendants–Appel-**
**lees.**

Nos. 90–5223, 90–5224.

United States Court of Appeals,
Tenth Circuit.

June 17, 1991.

Order Granting Rehearing and Amending
Opinion; Rehearing En Banc Denied
July 19, 1991.

---

**3.** Because of our remand, Serrano's claim that he had insufficient time to review the presentence report is moot.

\* Since the case was filed, Susan Brimmer Loving has become the Attorney General of the State of Oklahoma, and she is accordingly substituted for Robert H. Henry as an appellee in this case.

Anthony Jerome Harris, pro se.

Susan Brimmer Loving, Atty. Gen. of Okl., Diane L. Slayton, Asst. Atty. Gen., Oklahoma City, Okl., for defendants-appellees.

Before McKAY, SEYMOUR and EBEL, Circuit Judges.

EBEL, Circuit Judge.

## BACKGROUND

Petitioner was convicted in Oklahoma state court of the related crimes of forcible sodomy and assault and battery with a dangerous weapon. Petitioner was consecutively sentenced to fifteen years on the sodomy conviction and five years on the assault and battery conviction. Petitioner alleges that upon being sentenced on September 29, 1988, he invoked his right to an appeal and requested that counsel be appointed for that appeal. For reasons that are unclear, the appeal was not immediately perfected. Eventually, on May 11, 1989, the Oklahoma Appellate Public Defender filed an Application for Late Appeal. That application was granted on May 18, 1989, on the grounds that petitioner was denied a direct state appeal "through no fault of his own." Almost one year later, in response to an inquiry about his appeal, petitioner received a letter dated April 16, 1990, from the Oklahoma Appellate Public Defender's Office. In relevant part the letter read:

You will receive a copy of anything this office files in the Court of Criminal Appeals in your behalf. So far there has been a petition and an extension filed. There will be nothing else filed except extensions until we are able to prepare your brief or the court issues a final extension.... It will be at least 3 years before we are able to file your brief with the court.

On May 22, 1990, while his state appeal was still pending, petitioner filed a habeas corpus petition in the United States District Court for the Northern District of Oklahoma, raising a number of alleged constitutional deficiencies in his trial and sentence and also alleging constitutional violations of due process, equal protection, and his right to counsel because of the delays encountered in getting the Oklahoma Appellate Public Defender to prepare his brief on appeal. The standard habeas petition form used by petitioner asked him to explain any failure to raise his issues on direct appeal and cautioned him about the requirements of exhaustion. In explaining his situation, petitioner referred the district court to two attachments. One attachment was a photocopy of the above-quoted letter. The other attachment was a hand-written explanation as to why petitioner should be excused from the requirements of exhaustion. The petitioner claimed that his direct state "appeal is futile since petitioner will [sic] discharge before his appeal can even be heard." The state moved to dismiss the habeas petition for lack of exhaustion. The Magistrate recommended that the motion to dismiss be granted, stating that

[r]espondents move to dismiss the [habeas petition] alleging Harris has not yet exhausted his state remedies. Specifically, Respondents point out that Petitioner is currently pursuing a direct appeal....

Where a state prisoner has pending an appeal in the state court ..., comity requires a federal court abstain from using its federal habeas corpus jurisdiction.

The district court adopted the Magistrate's recommendation and dismissed the petition without prejudice.[1] This appeal follows.

## ANALYSIS

The district court was correct that before a petitioner may proceed in federal court under 28 U.S.C. § 2254, he or she must first exhaust viable state remedies. The statute reads:

An application for a writ of habeas corpus ... shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State, or that there is either an absence of available State corrective process *or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner.*

28 U.S.C. § 2254(b) (emphasis added).

■ We are concerned here with the exceptions to the exhaustion requirement. Many courts have recognized that "a state convict is relieved of his obligation to exhaust his state remedies whenever there has been excessive and unjustified delay in the disposition of his state direct or post-

---

1. Petitioner also unsuccessfully sought post-con- viction relief in the state courts.

conviction remedy proceeding." D. Wilkes, *Federal and State Postconviction Remedies and Relief* §§ 8–19, at 186 (1987). *See Coe v. Thurman,* 922 F.2d 528, 531 (9th Cir.1990); *Elcock v. Henderson,* 902 F.2d 219, 220 (2d Cir.1990); *Burkett v. Cunningham,* 826 F.2d 1208, 1221 (3d Cir. 1987); *Okot v. Callahan,* 788 F.2d 631, 633 (9th Cir.1986); *Cook v. Florida Parole and Probation Comm'n,* 749 F.2d 678, 680 (11th Cir.1985); *Pool v. Wyrick,* 703 F.2d 1064, 1066 (8th Cir.1983); *Shelton v. Heard,* 696 F.2d 1127, 1128–29 (5th Cir. 1983); *Dozie v. Cady,* 430 F.2d 637, 638 (7th Cir.1970). *Cf. Rheuark v. Shaw,* 628 F.2d 297, 302–03 (5th Cir.1980), *cert. denied sub nom. Rheuark v. Dallas County Texas,* 450 U.S. 931, 101 S.Ct. 1392, 67 L.Ed.2d 365 (1981) (in a § 1983 action "a delay of nearly two years ... exceeds the limits of due process").

Indeed, this court has long recognized that "inordinate, excessive and inexcusable delay" in a state appeal process may excuse the need of a federal habeas petitioner to exhaust state remedies. *See Jones v. Crouse,* 360 F.2d 157, 158 (10th Cir.1966). *See also Way v. Crouse,* 421 F.2d 145, 146 (10th Cir.1970) ("an inordinate, excessive and inexcusable delay may very well amount to a denial of due process cognizable in federal court"); *Smith v. Kansas,* 356 F.2d 654, 655 (10th Cir.1966), *cert. denied,* 389 U.S. 871, 88 S.Ct. 154, 19 L.Ed.2d 151 (1967) (delays in processing defendant's post-conviction motions for relief in the state courts deprived him of the "swift and imperative remedy" to which he was constitutionally entitled, and hence the federal district court was ordered to consider the merits of petitioner's claim for federal habeas relief). *Cf. DeLancy v. Caldwell,* 741 F.2d 1246, 1247 (10th Cir.1984) (holding in the context of a § 1983 claim that "excessive delay in furnishing a ... trial transcript to be used on appeal ... can amount to a deprivation of due process").

■ Respondents assert that petitioner should not be excused from the requirements of exhaustion because "[t]he only conceivable delay in the Petitioner's appeal was due to Petitioner's counsel's present requests for extensions which have been granted." In only a syllogistic sense is this true. The letter sent to petitioner by the Oklahoma Appellate Public Defender's Office, which is uncontroverted in this record, suggests that the delay in preparing petitioner's brief on appeal is caused by the inability of that office to address petitioner's case in a timely fashion. It would not, under those circumstances, be accurate to attribute the delay to this indigent petitioner. Instead, the record suggests that this is a delay forced upon an unwilling petitioner by reason of his indigency. Furthermore, the record suggests that this delay has been endorsed and made possible by the willingness of the Oklahoma Court of Criminal Appeals to grant the lengthy continuances requested by the Appellate Public Defender's Office. If, in fact, the delay has been caused by the Oklahoma Appellate Public Defender's Office and authorized by the Oklahoma Court of Criminal Appeals, we would have no difficulty in attributing such delays to the state, particularly if the petitioner has not personally caused the delays nor condoned them: "Failures of court-appointed counsel and delays by the court are attributable to the state." *Coe v. Thurman,* 922 F.2d at 531. *Cf. Barker v. Wingo,* 407 U.S. 514, 531, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101 (1972) ("[T]he ultimate responsibility [for overcrowded courts] must rest with the government rather than with the defendant.").

■ Competent court-appointed counsel is a constitutional right for all indigent criminal defendants in a first appeal provided of right by the state. *See Evitts v. Lucey,* 469 U.S. 387, 393–94, 105 S.Ct. 830, 834–35, 83 L.Ed.2d 821 (1985); *Douglas v. California,* 372 U.S. 353, 357–58, 83 S.Ct. 814, 816–17, 9 L.Ed.2d 811 (1963). There is nothing in the record before us that would justify a delay of approximately four years to file an appellate brief for this petitioner from the date his case was docketed in the Oklahoma Court of Criminal Appeals.[2]

**2.** The delay is approximately four and one-half years if measured from the date of his sentence and confinement.

The Oklahoma Appellate Public Defender's Office has offered no justification other than its own scheduling difficulties. While we are sympathetic with the heavy demands put on that office, that explanation is insufficient to justify the continued withholding of federal relief until the petitioner has exhausted inordinately-delayed state remedies. We must keep in mind that

> [t]he requirement to exhaust state remedies is not a jurisdictional limitation on the federal courts. Rather it is a matter of comity between the federal and state courts. The forbearance of the federal courts is based upon the assumption that the state remedies available to petitioners are adequate and effective to vindicate federal constitutional rights. When those state procedures become ineffective or inadequate, the foundation of the exhaustion requirement is undercut and the federal courts may take action.

*Shelton,* 696 F.2d at 1128 (citations omitted) (citing *Rose v. Lundy,* 455 U.S. 509, 516 n. 7, 102 S.Ct. 1198, 1202 n. 7, 71 L.Ed.2d 379 (1982), and *Fay v. Noia,* 372 U.S. 391, 433–34, 83 S.Ct. 822, 845–46, 9 L.Ed.2d 837 (1963)). It is the duty of the state in this case to provide effective and adequate counsel that will ensure indigent convicts a timely direct appeal. Petitioner has alleged facts not controverted by the state, which are sufficient to constitute an excuse from his having further to exhaust state remedies.

*Prescher v. Crouse,* 431 F.2d 209 (10th Cir.1970) is not to the contrary. There, we rejected petitioner's argument that he should be excused from the requirement of exhaustion because of a delay in his state appeal. *Id.* at 211. However, in *Prescher,* the petitioner had only waited fifteen months for his appeal.[3] Further, we pointed out that his appeal was then "imminent," apparently due to the state having expedited the processing of his appeal. Additionally, the court-appointed attorney, who was a private practitioner, explained that the printers had difficulty in producing a copy of the transcript, and that the attorney himself was having trouble finding support for his legal arguments. The state had on several occasions intervened to try to facilitate the filing of petitioner's brief. Thus, in *Prescher* we made clear that that "case present[ed] unique facts which relieve[d] the state of responsibility for the lengthy delay." *Id.* at 210–11. Accordingly, we do not give undue weight to the dicta in that opinion to the effect that "[w]e are not alone in ruling that a delay caused by court-appointed counsel is not imputed to the state, particularly where the state has attempted to expedite the processing of the appeal." *Id.* at 212. See for example *Evitts,* 469 U.S. at 396–97, 105 S.Ct. at 836–37; *Cuyler v. Sullivan,* 446 U.S. 335, 342–45, 100 S.Ct. 1708, 1714–16, 64 L.Ed.2d 333 (1980); *Anders v. California,* 386 U.S. 738, 744, 87 S.Ct. 1396, 1400, 18 L.Ed.2d 493 (1967), all of which implicated state action in various situations involving ineffective assistance of counsel claims. As noted above, the involvement of the state in the delays encountered by this petitioner were so pervasive that we have no difficulty finding state action here. Finally, *Prescher* was decided well before the Supreme Court in *Evitts* explicated the requirements of effective appellate counsel.

 We think it appropriate to consider both the two-year delay that has already occurred and the two additional years of delay projected by the Oklahoma Appellate Public Defender before petitioner's brief will be filed in the Oklahoma Court of Criminal Appeals. Even if the state were now to accelerate its schedule of when petitioner's brief could be filed, that would be only one factor that must be weighed in making our comity determination of the need for exhaustion; a promise of future action does not require us to blind ourselves to past inaction.

> 'Nor is [the past delay] to be overcome by a present exercise of diligence and treated as if it had not occurred. Any such rule would mean that defendant may be freely given improper consideration until the system ... [is] caught

---

**3.** In *Prescher* we described even a fifteen-month delay as sufficient to give rise to "grave concerns in the realm of due process." *Prescher,* 431 F.2d at 211.

out....' [T]he view that a rule of exoneration by state expedition initiated only after a federal court has blown the due process whistle would be unwise. Equally unwise, however, would be a rule that ignored any attempts by a state to remedy its procedural oversight once a petition for habeas corpus was filed. If the former rule deprives federal habeas corpus of any sanction, the latter deprives states of any incentive to remedy grievous wrongs at the earliest moment....

[I]n this delicate area of comity, bright line rules are not the answer. The objective is not for one judicial system to score points against the other, but to assure expeditious justice to individuals and to retain all incentives for both the state and federal systems to labor toward that end.

*Layne v. Gunter,* 559 F.2d 850, 851–52 (1st Cir.1977), *cert. denied,* 434 U.S. 1038, 98 S.Ct. 776, 54 L.Ed.2d 787 (1978). *See Rivera v. Concepcion,* 469 F.2d 17, 20 (1st Cir.1972); *Wojtczak v. Fulcomer,* 800 F.2d 353, 356 & n. 3 (3d Cir.1986).

■ Requiring a petitioner to exhaust an unreasonably delayed state appeal before he can maintain a federal habeas action would exacerbate several constitutional concerns. First, it will be necessary to examine the absolute length of time that will likely be required for the direct appeal process. Here, the petitioner has alleged that it will be at least four years after the docketing of his appeal and four and one-half years after sentence was imposed before his brief will be filed in the Oklahoma Court of Criminal Appeals. Beyond that, there remains an indeterminate time before his case will be set for argument and ultimately decided by the Court of Criminal Appeals.

Second, attention should be given to the relative length of the appellate process in relationship to the length of the sentence. Admittedly, this factor will not always be dispositive because some prisoners will have short sentences, and even a reasonable delay in the appellate process may cause the prisoner to be released before his appeal can be decided. Here, however, the petitioner is appealing consecutive sentences of fifteen and five years, and he is asserting that with good time and other credits, the incarceration time for one or both sentences may be satisfied before his direct appeal is finally resolved.[4] If the time required to exhaust this petitioner's direct state appeal is so lengthy that he will have served the incarceration time for one or both of his state sentences before he can exhaust state remedies, the effectiveness of federal habeas relief for this petitioner will be significantly reduced.

Third, the court should address the equal protection implications of the allegation that indigent appellants may have their appeals inordinately delayed.[5] The Supreme Court in *Douglas,* 372 U.S. at 355, 83 S.Ct. at 815, after finding a constitutional right to counsel on direct appeal, reiterated its earlier statements in *Griffin v. Illinois,* 351 U.S. 12, 19, 76 S.Ct. 585, 590, 100 L.Ed. 891 (1956), that "there can be no equal justice where the kind of an appeal a man enjoys 'depends on the amount of money he has.'" While the United States Supreme Court did concede that, as regards the differences in quality between retained and appointed appellate counsel, "[a]bsolute equality is not required," *id.* 372 U.S. at 357, 83 S.Ct. at 816, if petitioner's direct

---

**4.** The most that the state could say in response is that "in all likelihood the appeal will be decided during the time which Petitioner is incarcerated. Furthermore, the fact that petitioner may have finished serving his sentence when his appeal is denied does not render the appeal moot." State's Brief in Support of Motion to Dismiss for Failure to Exhaust, R.Doc. 4 at 5. Not only do we find this argument unpersuasive in the context of the petitioner's current sentence, but it is further undermined because petitioner claims that he was sentenced under the wrong statute and that the maximum penalty

under the correct statute is lower. Thus, to the extent that possible good time and other credits could result in the petitioner being released before his appeal is heard, the ineffectiveness of such an appeal is further exacerbated given his claim that he was sentenced under the wrong statute.

**5.** We do not rule on the merits of petitioner's equal protection, due process, or right to effective counsel claims at this time. That is a matter for the district court to consider on remand.

appeal is being substantially delayed merely because he is indigent, that may be a difference where "lines can be and are drawn." *Id.* Petitioner alleges not that the Oklahoma Court of Criminal Appeals has a general backlog which affects all convicted appellants equally but rather that his appeal rights are being substantially delayed because, as an indigent appellant, he is forced to rely on the Oklahoma Appellate Public Defender's Office, which is incapable of filing his brief in a timely fashion. To the extent that this delay may impinge upon petitioner's equal protection rights as guaranteed by *Douglas,* an insistence upon further exhaustion of state remedies would inappropriately subjugate petitioner's constitutional rights to the concerns of comity.

Fourth, the court should address petitioner's due process claims. Although we are ruling only on the petitioner's right to be excused from exhaustion, many courts have analyzed the state appellate delay issue in terms of due process rights. Indeed, this court has recognized that "delay of the post-conviction remedy may very well work a denial of due process...." *Kelly v. Crouse,* 352 F.2d 506, 506 (10th Cir.1965). *See also Way v. Crouse,* 421 F.2d at 146; *Jones v. Crouse,* 360 F.2d at 158; *Smith v. Kansas,* 356 F.2d at 656 (10th Cir.1966), 356 F.2d 654. The Second Circuit used the factors listed in *Barker v. Wingo,* 407 U.S. at 530–33, 92 S.Ct. at 2191–93, to conclude that a petitioner was both excused from the requirement of exhaustion and had suffered a due process violation. *Simmons v. Reynolds,* 898 F.2d 865, 868 (2d Cir.1990). In *Simmons,* the court stated that

> [i]n determining whether a delay of a prisoner's appeal violates due process, we look to the *Barker* criteria, although no one factor is dispositive and all are to be considered together with the relevant circumstances.... First, the length of this delay, six years, was clearly excessive.... Second, no acceptable reason for the delay has been urged; and it was caused, at least in part, by the state court's failure to supervise its appointed attorneys and to monitor its own calendar. Third, [defendant] did not waive his right to appeal.... Finally, [the district court] found that the delay caused ... 'appreciable' prejudice. In light of these circumstances, we agree ... that the six-year delay ... deprived him of his due process right to a speedy appeal.

*Id.* at 868. Without ruling on the merits of petitioner's due process claims, we can at least conclude that his due process concerns would be exacerbated by a slavish adherence to exhaustion in this case.

Finally, our fifth concern is that we are troubled by the interaction between requiring exhaustion in this case and petitioner's right to effective assistance of appellate counsel. The Supreme Court has noted that "the promise of *Douglas* that a criminal defendant has a right to counsel on appeal ... would be a futile gesture unless it comprehended the right to the *effective assistance of counsel." Evitts,* 469 U.S. at 397, 105 S.Ct. at 836–37 (emphasis added). In this case, petitioner technically has appointed counsel, but the past and future alleged delays may be so great that at some point his counsel's delay in filing his appellate brief either has or will render such assistance ineffective. "[N]ominal representation on an appeal ... does not suffice to render the proceedings constitutionally adequate; a party whose counsel is unable to provide effective representation is in no better position than one who has no counsel at all." *Id.* at 396, 105 S.Ct. at 836. *See Simmons,* 898 F.2d at 868. Once again, we need not decide the merits of any such claim at this time, and we address this concern only to point out that in balancing petitioner's constitutional rights against the comity concerns of exhaustion, we must not allow a desire for comity to cause or exacerbate a violation of petitioner's basic constitutional rights.

■ We now turn to the matter of relief. When, as here, a habeas petitioner makes colorable and sufficient allegations of an unconstitutional delay in obtaining direct state appellate review of his criminal conviction, thus raising a federal due process claim independent of any trial errors, the federal district court should consider that claim on its merits without requiring that

he exhaust his direct state appeal first. It would make no sense to require a petitioner to exhaust the very procedures that he claims are being unconstitutionally protracted before he can raise that issue in the federal court. Habeas relief would be rendered ineffective if the petitioner were required to suffer the very unconstitutional conduct of which he is complaining before the federal court can consider that claim. The Ninth Circuit, in *Coe v. Thurman,* stated that

> it would be meaningless to insist that petitioner exhaust his state remedies when the essence of his due process claim arises directly out of his inability to do so. [citing 2d, 3d and 5th Circuit cases].
>
> ... [W]e now hold that since excessive delay in obtaining an appeal may constitute a due process violation, a prisoner need not fully exhaust his state remedies if the root of his complaint is his inability to do so.

*Coe v. Thurman,* 922 F.2d at 530–31 (citations and quotations omitted). Likewise, the First Circuit in *Odsen v. Moore,* 445 F.2d 806 (1st Cir.1971), stated "we confess to a sense of the absurd in saying to one who without success has for nearly three years tried to spur both his court-appointed counsel and, apparently, the courts to action, that he must persevere in perpetuity before he can complain of failure to a federal court." *Id.* at 807. *See also Brooks v. Jones,* 875 F.2d 30, 31 (2d Cir.1989); *Geames v. Henderson,* 725 F.Supp. 681, 684 (E.D.N.Y.1989). *Cf. Way v. Crouse,* 421 F.2d at 146 ("In our view [the petitioner] properly resorted to the federal court, which should not, without knowing the facts and circumstances of the eighteen-month delay, have required him at this late date to commence a completely new and independent proceeding through the very courts which are responsible, on the face of the pleadings, for the very delay of which he complains.").

By contrast, when the federal habeas petitioner is alleging only that there were federal constitutional errors at his state *trial,* comity requires that the petitioner exhaust his state appeals before the federal court will consider those issues unless he can show such "inordinate, excessive and inexcusable delay" in the state appeal process that exhaustion would render his habeas rights ineffective to review the alleged trial errors. *See Jones v. Crouse,* 360 F.2d at 158.

Here, the habeas petition asserts the appellate delay both as a ground for independent constitutional claims and as an excuse for being relieved of the need to exhaust state remedies before being allowed to raise unconstitutional trial errors in his federal habeas action. Because the district court will be considering the merits of petitioner's claim that the appellate delays directly violated his constitutional rights, it should at the same time determine whether those appellate delays so impair his ability to raise his claims of unconstitutional trial error that he should be excused from exhausting his state appeal as to those trial claims before they too may be heard on their merits by the federal court.

It is not always easy to fashion relief when it is determined that a state has unconstitutionally delayed a defendant's right to appellate review of his state conviction and sentence. For a review of the remedies that have been ordered by various courts, *see generally* Arkin, *Speedy Criminal Appeal: A Right Without a Remedy,* 74 Minn.L.Rev. 437, 481–505 (1990). To the extent that the petitioner seeks to raise trial errors that are constitutional in nature, the federal court may, of course, in a habeas action excuse the exhaustion requirement of § 2254 and proceed to hear those claims on their merits.[6] However, to the extent that the petitioner seeks to raise any non-constitutional, purely state-law claims in his delayed state appeal,[7] the fed-

---

**6.** Depending upon the circumstances, the district court could also give the state a limited period of time to hear and decide the appeal before proceeding with the federal habeas action.

**7.** Petitioner here appears to be seeking to raise some purely state-law claims as well as some constitutional claims in his state appeal.

eral court on habeas can not review such claims and address them on their merits. The most practical remedy available to the federal court in that situation is to order the defendant released from custody unless he is promptly given his state appeal.

██ When the federal habeas court addresses a petitioner's substantive claim of unconstitutional delays in his state appeal, the most typical remedy is to order the defendant released from custody unless the state court hears the petitioner's appeal [8] within a clearly-defined, relatively short period of time (such as 90 days). *See Coe v. Thurman,* 922 F.2d at 533; *Simmons,* 898 F.2d at 869-90 (2d Cir.1990). In more egregious cases, particularly where the state has not been responsive to previous orders, the relief has occasionally been the outright discharge of the petitioner from state custody. *See Burkett v. Cunningham,* 826 F.2d at 1226. Other relief has included ordering bail for the defendant until his appeal can be heard, *see Rivera v. Concepcion,* 469 F.2d 17, 20 (1st Cir.1972), and suggesting that the defendant may have a § 1983 claim for damages. *See Simmons,* 898 F.2d at 869. Other courts have ordered a new state trial unless the state resolves the appeal within a specified period of time. *Wheeler v. Kelly,* 811 F.2d 133, 135 (2d Cir.1987). Because the fashioning of appropriate relief is so dependent upon the facts that may be developed and subject to the discretion of the district court, we do not now attempt to resolve what relief, if any, may be appropriate in this case for this petitioner.

However, in this case we order the district court to broaden its inquiry upon remand. There are some disturbing indications that the delays experienced by this petitioner may be systematic to the Oklahoma Appellate Public Defender's Office, rather than an isolated incident. The language of the letter written by the Oklahoma Appellate Public Defender's Office to petitioner did not suggest any facts unique to this petitioner that would have occasioned the approximately four years of time needed to file his appellate brief. Additionally, in another case presently pending before this court, we have a similar letter from the Oklahoma Appellate Public Defender's Office, which advised the petitioner there that it would be at least three years from the date of his trial (two years from the date the letter was written) before the Oklahoma Appellate Public Defender's Office could file his brief in the Oklahoma Court of Criminal Appeals. *Bunton v. Cowley,* No. 90-6316, 936 F.2d 582 (table) (10th Cir.1990). The only reason given for the delay in that letter is that there are 200 cases which are older and which have to be prepared first. These similar letters caused us to make a random examination of recently reported cases decided by the Oklahoma Court of Criminal Appeals to see if there is a difference in time between criminal appeals handled by private attorneys and criminal appeals handled by the Oklahoma Appellate Public Defender's Office. Although our survey was very preliminary and abbreviated, it suggests that when the appeal is handled by the Oklahoma Appellate Public Defender's Office the average length of time between docketing the appeal with the Oklahoma Court of Criminal Appeals and the disposition of the appeal is approximately 43 months. By contrast, it is closer to 22 months, when the appeals are handled by private attorneys.[9]

---

**8.** In this case it may be more appropriate to relate the time to the preparation and filing of petitioner's appellate brief since that is the delay of which he is complaining.

**9.** The date of the decision by the Oklahoma Court of Criminal Appeals in these cases is known precisely from the opinion. The date that the appeal was docketed with the appellate court is known only by the year from the number on the docketing statement shown on the opinion. For purposes of this survey, we simply assumed all appeals (both those handled by private attorneys and those handled by the Oklahoma Appellate Public Defender's Office) were docketed in the middle of the year, on June 30 of whatever year is shown on the docket number. On remand, the district court may wish to conduct a more precise survey. Compare the following cases handled by the Oklahoma Appellate Public Defender's Office, *Lampkin v. State,* 808 P.2d 694 (Okla.Crim.App.1991); *Williams v. State,* 807 P.2d 271 (Okla.Crim.App.1991); *Loman v. State,* 806 P.2d 663 (Okla.Crim.App.1991); *Davenport v. State,* 806 P.2d 655

We are not equipped to make factual findings on appeal and we expressly decline to do so here. However, given the information recited above, we are concerned that individual relief granted on a case-by-case basis from delays occasioned by the Oklahoma Appellate Public Defender's Office may be ineffective and may unnecessarily involve the federal courts in reviewing claims from a large number of Oklahoma prisoners whose appeals are being processed by the Oklahoma Appellate Public Defender's Office. Thus, it seems more appropriate to remand for the district court to consider this petitioner's claims within the context of the systemic operations of the Oklahoma Appellate Public Defender's Office.[10] Once the constitutional scope of the problem is known, the district court should consider what relief is appropriate for this petitioner as well as such systemic relief, if any, as may be needed to prevent any ongoing constitutional violations that may be occurring as a result of the inability of the Oklahoma Appellate Public Defender's Office timely to prepare appeals for their indigent clients.

Accordingly, we ORDER as follows: First, the district court order dismissing this habeas petition for lack of exhaustion is reversed, and this case is remanded for further proceedings consistent with this opinion. Second, the district court should consolidate this habeas action with *Bunton v. Cowley*, No. 90–6316, 936 F.2d 582 (table) (10th Cir.1991), and *Hacker v. Saffle*, No. 91–6042, 936 F.2d 583 (table) (10th Cir. 1991), which are being remanded to the district court on this same day, together with any other habeas actions that may be pending in the United States District Court for the Northern District of Oklahoma

which raise a claim of untimely state appeal by the Oklahoma Appellate Public Defender's Office. Third, the district court should conduct a full hearing, as expeditiously as possible, into possible systemic delays of the Oklahoma Appellate Public Defender's Office in preparing and filing appellate briefs for their indigent clients. The hearing should address the time that has been required and is expected to be required in the future to file appellate briefs, and the reasons for the delays. The Oklahoma Appellate Public Defender's Office and the Oklahoma Attorney General shall be notified and requested to participate in this hearing. The district court should also invite the expression of any views that the Oklahoma Court of Criminal Appeals may wish to transmit and, within its discretion, it may wish to solicit other amicus views as well. All interested parties should be encouraged to work together to suggest possible solutions to the court to correct any constitutional deficiencies that may be found. Fourth, the district court shall make detailed findings of fact and conclusions of law and it shall enter orders specifically addressing and remedying any constitutional violations that may be found. Fifth, in light of the complexities of this case and the importance of the issues raised herein to the overall administration of justice, the district court is requested to appoint experienced counsel to represent the petitioners in these collectively remanded cases.[11]

It is so ORDERED.

## ORDER GRANTING REHEARING AND AMENDING PREVIOUS ORDER

This court entered its opinion in this case on June 17,1991. On July 1, 1991, appel-

---

(Okla.Crim.App.1991); *Snyder v. State*, 806 P.2d 652 (Okla.Crim.App.1991); *Staggs v. State*, 804 P.2d 456 (Okla.Crim.App.1991); *Arnold v. State*, 803 P.2d 1145 (Okla.Crim.App.1990), with the following criminal appeals which appear to have been handled by a private attorney, *Probst v. State*, 807 P.2d 279 (Okla.Crim.App.1991); *Edington v. State*, 806 P.2d 81 (Okla.Crim.App. 1991); *Cosgrove v. State*, 806 P.2d 75 (Okla. Crim.App.1991); *Posey v. State*, 805 P.2d 687 (Okla.Crim.App.1991); *Swain v. State*, 805 P.2d 684 (Okla.Crim.App.1991); *Spears v. State*, 805 P.2d 681 (Okla.Crim.App.1991); *Huckaby v. State*, 804 P.2d 447 (Okla.Crim.App.1990).

10. Petitioner's equal protection claim, and the need of the district court to examine the reasons for the delay in addressing the exhaustion issue, certainly invite this broader scrutiny.

11. *See Kennedy v. Shillinger*, 759 F.Supp. 1554, 1556 (D.Wy.1991) (Barrett, J., sitting by designation as a district judge, appointed counsel to represent a federal habeas petitioner who was challenging a state conviction).

lees Ron Champion, Warden, and Robert H. Henry, the Attorney General for the State of Oklahoma, filed a timely Petition for Rehearing and Suggestion for Rehearing En Banc. The Petition for Rehearing asks that the panel's previous opinion be modified in three particulars. They will be dealt with in turn:

First, appellees express concern about the scope of the remedy that may result on remand. However, our opinion does not purport to prejudge for the district court what may be an appropriate remedy, and it is premature now for the appellees to speculate that the district court may issue an inappropriate remedy over parties not before it. The district court is dealing with habeas corpus proceedings, but, as pointed out at pages 1069–70 of our opinion, a wide range of remedies is available in habeas corpus actions where a defendant is unconstitutionally deprived of his right to counsel on appeal. Nothing in our opinion suggests that improper relief could, or should, be awarded in this case and we will not presume to the contrary.

It is entirely appropriate that the district court review the operations of the Oklahoma Appellate Public Defender's Office in providing appellate counsel for its indigent criminal defendants. The petitioner in this case has raised serious constitutional concerns about the systemic operations of the State Appellate Public Defender's Office as they relate to his direct criminal appeal before the Oklahoma Court of Criminal Appeals. Certain of petitioner's allegations, such as his equal protection, due process, and exhaustion claims, can not be examined in a vacuum, and they will, of necessity, require the federal district court to examine the general availability of legal assistance for indigent criminal defendants from the Oklahoma Appellate Public Defender's Office. Thus, appellees' petition for rehearing is denied insofar as it seeks modification of the scope of the hearing or a pre-hearing limitation on the scope of potential relief that may be ordered by the district court.

■ Second, petitioners ask that we modify our opinion to the extent that we have instructed the district court to request the Oklahoma Appellate Public Defender's Office and the Oklahoma Attorney General's Office to participate in the hearing. The Attorney General for the State of Oklahoma is a party in this action. One of the defendant's sentences is a consecutive sentence which is to be served in the future, and thus he is apparently under the direct jurisdiction of the Attorney General as to that sentence. See Appellee's Petition for Rehearing at page 7. In any event, even if the Attorney General were not a party, her participation as a witness would be of assistance to the court. Although the Oklahoma Appellate Public Defender's Office is not a party, it is appropriate to request the participation of that office in this hearing to testify as a witness in response to the constitutional allegations made by petitioner. In any event, appellees seem to have missed the thrust of our request that they participate in the hearing. Serious constitutional challenges are being made against the way that the State of Oklahoma provides appellate counsel for its indigent criminal defendants. One would think that the Attorney General's Office would want to be represented at a hearing where such matters are under review. It is the intention of this court that the district court probe fully the extent of the petitioner's allegations. In the interest of comity as well as in the interest of providing an adequate review of appellant's allegations, the views of the State of Oklahoma should be solicited as broadly as possible. Thus, appellees' petition that we modify our opinion requesting the presence of the Attorney General's Office and the Oklahoma Appellate Public Defender's Office is denied.

■ Third, the Petition for Rehearing asks that the cases of *Bunton v. Cowley*, 936 F.2d 582 (10th Cir.1991), and *Hacker v. Saffle*, 936 F.2d 583 (10th Cir.1991), not be consolidated with this case upon remand because venue for those cases is properly lodged in the Western District of Oklahoma rather than in the Northern District of Oklahoma. That request is well taken, and it will be granted. The opinion previously

entered in this case is amended to delete the requirement that *Bunton v. Cowley* and *Hacker v. Saffle* be consolidated with this case. Those two cases have been remanded to the Western District of Oklahoma for further proceedings in accordance with the opinion previously entered in this case. It is our expectation that the Western District of Oklahoma will coordinate its review of the *Bunton* and *Hacker* petitions (and any other cases pending in that court raising similar issues) so as to minimize the duplication of efforts to be undertaken by the Northern District of Oklahoma in its review of this case on remand. The chief judges of the Northern, Eastern and Western Districts of Oklahoma are encouraged to consider the use of interdistrict designation of judges and other docket management techniques to coordinate the efficient and orderly resolution of habeas cases and § 1983 cases pending in their respective districts that raise similar issues.

We do, however, reaffirm the order in our previous opinion that the Northern District of Oklahoma consolidate, to the extent it is practical and reasonable to do so, for purposes of the hearing on remand any other habeas corpus cases presently pending in that court that raise a constitutional attack upon the delay in obtaining legal services from the Oklahoma Appellate Public Defender's Office for a direct criminal appeal to the Oklahoma Court of Criminal Appeals. The petitioners' claims here could well affect and overlap other habeas petitions pending before the Northern District of Oklahoma which raise the same issue. In the exercise of our supervisory responsibilities, we deem it more efficient if such cases can be consolidated, to the extent deemed practical and reasonable by that court, for the purposes of the hearing ordered on remand.

It is the obligation of this court and the federal district courts to insure that the constitutional rights of indigent habeas petitioners are not violated by the denial, individually or systematically, of effective counsel on their first direct criminal appeals. Thus, we affirm our previous opinion that such allegations be investigated promptly and comprehensively and that the district court enter appropriate relief consistent with its findings after such a hearing. Except as so modified, our prior opinion is reaffirmed in all particulars.

In accordance with Rule 35(b), Federal Rules of Appellate Procedure, the suggestion for rehearing en banc was transmitted to all of the judges of the court who are in regular active service on the court having requested that the court be polled on rehearing en banc, Rule 35, Federal Rules of Appellate Procedure, the suggestion for rehearing en banc is denied.

The mandate shall issue forthwith.