Doyle Kent KING, Petitioner–Appellant,

v.

Ron CHAMPION; Attorney General, Respondents–Appellees.

No. 93–5192.

United States Court of Appeals, Tenth Circuit.

May 18, 1995.

Susan M. Otto, Federal Public Defender, Western Dist. of Oklahoma, Oklahoma City, OK, for petitioner-appellant.

Susan B. Loving, Atty. Gen., Diane L. Slayton, Asst. Atty. Gen., Oklahoma City, OK, for respondents-appellees.

Before BRORBY, LOGAN, and EBEL, Circuit Judges.

LOGAN, Circuit Judge.

Petitioner Doyle Kent King appeals the district court's order of August 9, 1993, denying him habeas relief under 28 U.S.C. § 2254 on his claim that state court delay in adjudicating his direct criminal appeal violated his federal due process rights.[1] We exercise jurisdiction under 28 U.S.C. § 1291, and affirm.[2]

Petitioner was convicted in Oklahoma state court of assault and battery with intent to commit a felony, for which he received a twenty-five-year sentence, and of escape from a penal institution, for which he also received a twenty-five-year sentence. Petitioner appealed these convictions to the Oklahoma Court of Criminal Appeals in July 1985. By October 1986, petitioner's appeal was fully briefed and ready for resolution by the court. When petitioner filed his habeas petition in federal court in April 1992, however, the Oklahoma court had yet to issue a decision in his case. Petitioner claimed that this delay in adjudicating his appeal violated his right to due process.

For purposes of investigation and resolution, petitioner's habeas case was grouped together with numerous other habeas cases alleging delay in Oklahoma's criminal appellate processes, pursuant to this court's remand order in *Harris v. Champion,* 938 F.2d 1062, 1071, 1073 (10th Cir.1991) (*Harris I*). These habeas cases, referred to as the *Har-*

*ris* cases, were presided over by a three-judge panel of the district court, made up of one judge from each of the federal districts in Oklahoma, which ruled on the issues of law and fact that were common to all. *See Harris v. Champion,* 15 F.3d 1538, 1552 (10th Cir.1994) (*Harris II*) (discussing formation and purpose of three-judge panel).

In June 1993, Judge Brett, one of the members of the three-judge panel, held an evidentiary hearing concerning the individual circumstances of petitioner's case. By that time, the Oklahoma Court of Criminal Appeals had affirmed petitioner's convictions in a summary opinion issued on April 23, 1992. Therefore, to obtain habeas relief based on the delay in adjudicating his direct criminal appeal, petitioner had to show "actual prejudice to the appeal itself, arising from the delay," *Harris II,* 15 F.3d at 1566.

Judge Brett determined that petitioner's evidence was not sufficient to demonstrate prejudice to the appeal itself and, therefore, denied petitioner habeas relief on his claim of appellate delay. Before reaching the merits of this ruling, we must first consider petitioner's arguments that Judge Brett erred in not recusing himself and that petitioner should otherwise receive a new evidentiary hearing because Judge Brett improperly limited the evidence he could present at the hearing.

■ On appeal, petitioner notes that in *Harris II,* 15 F.3d at 1571, we held that Judge Brett should have recused himself from the *Harris* cases, pursuant to 28 U.S.C. § 455. We so held because Judge Brett's uncle was a member of the Oklahoma Court of Criminal Appeals during the time period at issue in many of the *Harris* cases and his uncle also was named as a party to the civil rights claim that was added to the *Harris*

---

1. After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed.R.App.P. 34(a); 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.

2. We originally dismissed petitioner's appeal for lack of jurisdiction because the district court's order, which did not adjudicate all petitioner's claims, was not certified for immediate appeal

pursuant to Fed.R.Civ.P. 54(b) and, therefore, was not a final appealable order. We vacated that decision on rehearing, however, and gave petitioner thirty days to secure a Rule 54(b) certification of the district court's ruling on his appellate delay claim. As the district court has now certified the August 9, 1993, ruling for immediate appeal and has dismissed the remainder of petitioner's claims without prejudice, we have jurisdiction to consider this appeal.

cases. We further determined, however, that Judge Brett's failure to recuse himself from the *Harris* cases did not require vacation of the three-judge panel's decisions with respect to the common issues of law and fact in those cases. *Harris II,* 15 F.3d at 1572. Instead, we ruled that the proper remedy for Judge Brett's violations of § 455 was for Judge Brett "to recuse himself from all further proceedings relating to these matters on remand, including any individual hearings that may be necessary." *Id.*

Judge Brett did not have the benefit of our ruling in *Harris II* when he conducted the evidentiary hearing here or when he ruled on the merits of petitioner's individual claim for appellate delay. Although we conclude, for the same reasons discussed in *Harris II,* that Judge Brett should have recused himself from petitioner's habeas action pursuant to § 455, his failure to do so does not require us to vacate his opinion and remand the action for a new hearing and decision. *See Liljeberg v. Health Servs. Acquisition Corp.,* 486 U.S. 847, 862, 108 S.Ct. 2194, 2203–04, 100 L.Ed.2d 855 (1988) (noting that § 455 "neither prescribes nor prohibits any particular remedy for a violation" of its provisions, rather, it leaves the task of formulating an appropriate remedy to the courts).

First, as petitioner acknowledges on appeal, further delay by the federal courts will only exacerbate any injury petitioner has already suffered as a result of delays by the state court. *See also Harris II,* 15 F.3d at 1572. Second, petitioner's appellate delay claim was decided almost entirely on the basis of undisputed facts. Although petitioner testified at the evidentiary hearing, resolution of this case did not require Judge Brett to make any credibility determinations. *See*

*id.* Thus, there is no need for a new factfinder to hear the testimonial evidence.

As an alternative remedy to remanding the case for a new hearing before a new judge, petitioner suggests that we review Judge Brett's findings of fact de novo, rather than for clear error. Under the particular circumstances of this case we hold there is no need for a remand. Petitioner is not entitled to relief under any standard of review we might apply, for the reasons stated hereafter.

Next, we consider petitioner's argument that he is also entitled to a new hearing because the district court improperly limited the evidence he was permitted to elicit at the June 29 hearing. At a scheduling conference preceding the evidentiary hearing, petitioner's counsel indicated that he wanted to call a judge from the Oklahoma Court of Criminal Appeals to testify at the hearing about what took the court so long to issue an opinion in petitioner's case. Counsel noted that the Oklahoma court had previously presented evidence that the judges' inability to agree on the wording of an opinion had led to the delay, and contended that this explanation conflicted with the Oklahoma court's eventual issuance of a summary opinion in petitioner's case.

Therefore, counsel said, he wanted a judge from the Oklahoma court to "explain how this summary opinion resolves the issue of them not having been able to agree upon language to affirm this fellow's conviction when there's no language in the summary opinion explaining the basis for their affirmance." I R.Supp. 10. Judge Brett, however, noted that this court had previously approved the Oklahoma court's use of summary opinions,[3] and said he would not permit coun-

---

3. In an unpublished order entered in a mandamus case that preceded our opinion in *Harris II,* we considered the *Harris* petitioners' challenge to the Oklahoma Court of Criminal Appeals' recent practice of issuing summary opinions on the merits in direct criminal appeals. We denied petitioners' request that we order the Oklahoma court to stop issuing summary opinions, stating:

> Summary procedures and opinions are not inherently bad, and their use may assist a court in reducing its backlog. While we understand petitioners' desire to be assured that the [Oklahoma Court of Criminal Appeals] will continue

to give adequate consideration to the merits of each case, we note that a summary opinion only indicates that less time has been spent in writing a decision, not that less time has been spent reviewing the merits and reaching that decision. Any constitutional error in the state court proceedings can be reviewed on habeas corpus pursuant to the standards set forth in 28 U.S.C. § 2254(d). *See Sumner v. Mata,* 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981).

sel to call an Oklahoma judge to testify as to the state court's thought processes in reaching a decision in petitioner's case.

On appeal, petitioner argues that "[b]y effectively denying [him] a meaningful opportunity to explore fully this aspect of delay, the district court improperly truncated the fact finding purpose of the evidentiary hearing." Appellant's Br. at 13. Therefore, petitioner contends, he should be granted a new hearing.

■ As an initial matter, we fail to see any conflict between the Oklahoma court's statement that the delay in adjudicating petitioner's appeal was caused by the individual judges' inability to agree on the wording of an opinion and the fact that after the Oklahoma court adopted the use of a summary opinion format in all cases not issued for publication, see Harris II, 15 F.3d at 1551, it then issued a summary opinion in petitioner's case. The use of a summary opinion in petitioner's case obviated the need for agreement as to the wording of a lengthier opinion. See id. ("By reducing the amount of legal analysis and discussion set forth in its unpublished opinions, the court eliminated lengthy conferences concerning the precise wording of the opinion, as well as the need for separate opinions when judges concurred in the outcome but not in the analysis.").

Moreover, we conclude that, under the circumstances, any reasonable judge would have denied counsel's request to call a judge from the Oklahoma court to testify about that court's decisional process. First, the reason for the delay given by the state clearly established both that the delay was exclusively the fault of the state and that the delay was not constitutionally justified. Further inquiry into the reason for the delay would, therefore, have been of little or no additional benefit to petitioner. Second, just as courts generally will not inquire into juries' deliberations, see United States v. Abbott Washroom Sys., Inc., 49 F.3d 619, 621 (10th Cir. 1995), so, too, a federal court would be reluctant to inquire into the deliberative process of a state appellate court whose opinion was before it on collateral attack.

Finally, any error in not permitting petitioner to inquire further into the reason for the Oklahoma court's delay was harmless, because the reason for the delay was just one of several factors to be considered in determining whether petitioner established a due process violation. Harris II, 15 F.3d at 1546–47. To prevail on his due process claim, petitioner also had to demonstrate that the delay resulted in prejudice to the appeal itself. Id. at 1566. Because, as we conclude below, petitioner failed to make the requisite showing of prejudice, his claim would have failed, regardless of the reason for the delay in adjudicating his appeal.

Having determined that petitioner is not entitled to another evidentiary hearing, we turn to the merits of petitioner's due process claim and, more specifically, his contentions of prejudice. While petitioner was pursuing his direct criminal appeal, one of his codefendants, who had not appealed his conviction, filed a motion for post-conviction relief in the state trial court. He alleged good cause for failing to take a direct appeal and also contended that his sentence on the escape conviction was legally in error. Petitioner had raised a similar challenge to his sentence for the escape conviction in his direct appeal. The local prosecutor apparently conceded sentencing error in the codefendant's case, and, in April 1988, the trial court granted the codefendant post-conviction relief. On resentencing, the trial court reduced the codefendant's sentence on the escape conviction.

This factual scenario gave rise to two of petitioner's claims of prejudice. First, he contended that he suffered anxiety and concern during the pendency of his appeal that was different from and greater than that suffered by other inmates awaiting their appeals, because he knew that his codefendant had been granted relief by the trial court on an issue that petitioner also had raised. Second, petitioner argued that he, too, would have received a reduced sentence from the

Harris v. United States Dist. Ct., Nos. 93–527, et al., slip op. at 10 (10th Cir. Apr. 22, 1993) (unpublished order).

trial court on the escape conviction if he had not taken a direct appeal to the Oklahoma Court of Criminal Appeals, or if that court had not taken so long to decide his appeal. Even if we accept these contentions as true, however, neither demonstrates any prejudice to the appeal itself arising from the delay.

Petitioner also attacked several aspects of the Oklahoma appellate court's decision in his direct appeal, from which he claimed prejudice. First, he contended that the decision was at odds with prior decisions of the Oklahoma Court of Criminal Appeals concerning the sentence on the escape conviction and that the summary format employed by the court gave the reader no explanation for this seeming departure from prior precedent. Further, petitioner contended that the summary format deprived him of the ability to file a meaningful petition for rehearing. Finally, petitioner argued that the opinion's seeming conflict with settled state law, coupled with its timing—the opinion was issued a few weeks after a hearing at which a member of the three-judge panel questioned the presiding judge of the Oklahoma Court of Criminal Appeals as to the cause for the delay—suggested that the Oklahoma court was more concerned with speed than with accuracy in issuing its opinion.

■ This last contention is without any support in the record. The Oklahoma court provided the district court with the following account of petitioner's direct appeal:

When the case was first assigned and written it was discussed during several conferences and three judges could not agree on an opinion. The case was reassigned and several drafts were taken to conference. Conflicts between the judges as to wording in the proposed opinion caused continual delay.

On several occasions apparent agreement was reached in conference and a new draft opinion written and circulated. However, a majority could still not be reached because some members of the court changed their minds. Ultimately agreement was reached after a change in court personnel.

I R. Doc. 209, Ex. 5; *id.* Doc. 182, Ex. J. Although petitioner thought this explanation

was at odds with the court's eventual issuance of a summary opinion in his case, he evidently did not dispute the Oklahoma court's representation that it engaged in some thoughtful consideration of his case; he included in the proposed findings of fact and conclusions of law that he submitted to the district court a finding that "[t]he delay at the [Oklahoma Court of Criminal Appeals] was caused by the [court's] inability to agree on language for the King opinion." *Id.* Doc. 212 at 3.

Thus, the evidence of record shows that, rather than rush to decision, the Oklahoma court deliberated at length over petitioner's case before issuing its decision. *Cf. Furman v. United States,* 720 F.2d 263, 265 (2d Cir. 1983) ("The fact that a disposition is by informal summary order rather than by formal published opinion in no way indicates that less than adequate consideration has been given to the claims raised in the appeal.").

Petitioner's other complaints about the Oklahoma court's issuance of a summary opinion in his direct appeal are similarly unavailing. First, as we have said before, there is nothing inherently objectionable in the Oklahoma court's use of summary opinions in unpublished cases. The United States Supreme Court has recognized that "courts of appeal should have wide latitude in their decisions of whether or how to write opinions." *Taylor v. McKeithen,* 407 U.S. 191, 194 n. 4, 92 S.Ct. 1980, 1982 n. 4, 32 L.Ed.2d 648 (1972) (per curiam); *see also Furman,* 720 F.2d at 264 ("There is no requirement in law that a federal appellate court's decision be accompanied by a written opinion."); 10th Cir. R. 36.1 ("It is unnecessary for the court to write opinions in every case.").

■ Second, even if we assume that the past delay in resolving petitioner's appeal ultimately prompted the Oklahoma court to use a summary format when issuing its opinion here, petitioner has not shown how the use of such a format affected the outcome of his appeal. Although petitioner spends much of his brief to this court arguing that the Oklahoma court's decision was wrong on the merits, at least with respect to the escape

sentencing issue, he does not suggest how the merits determination would have been different if the decision had come more quickly or if the Oklahoma court had not used a summary format for its opinion. This court may not correct errors of state law made by state courts. But, if petitioner properly presented a federal claim to the Oklahoma court and that court's resolution of the claim—whether in a summary opinion or a lengthier one—was incorrect, petitioner can seek relief on the merits of that federal claim through a habeas petition in federal court.[4]

AFFIRMED.

---

4. As we noted when we granted rehearing in this case, because petitioner has chosen to pursue his habeas claim for appellate delay separately from any other habeas claims he may have, petitioner may risk dismissal of a future habeas petition as successive under Rule 9(b) of the Rules Governing Section 2254 Cases.